## 59352, 59353. CLEMENTS v. CENTRAL BANK OF GEORGIA (two cases).

BIRDSONG, Judge.

Central Bank was granted a summary judgment against Clements, the indorser of a check which the bank accepted and presented unsuccessfully for collection to the drawee bank in Tennessee. Clements was denied summary judgment against the bank. Clements sought summary judgment on the grounds that the bank had not given Clements timely notice of dishonor and that he was therefore discharged from liability on the check, as a matter of law under Code Ann. § 109A-3—502.

The dishonored $30,000 check was drawn on a Tennessee bank by Ridley in Jasper, Tennessee, and made to Clements on September 19, 1978. Clements indorsed the check to Continental Equity Corporation, of which he was a director, on September 25; Continental endorsed the check and deposited it in Central Bank. On that same day, after accepting the check and crediting Continental's

account, the bank received notice from the Federal Reserve System that another apparently unrelated check by Ridley was being returned for lack of funds. The vice-president of the bank decided to expedite collection of the $30,000 check indorsed by Clements, and sent it by mail directly to the Tennessee bank, with an attachment instructing: "Check for collection— Return if not paid in three days." On September 29, the bank's branch manager called Bumpus (the Tennessee bank cashier) who informed the bank manager that the check was no good, drawn against uncollected funds, and would more than likely never be paid. The appellee's bank manager gave Bumpus authority to continue holding the check; had he not done so, the Tennessee cashier would have returned the check to the appellee bank. Several other telephone calls concerning the check's collection status were exchanged between the two banks in the following month.

On or about October 24, 1978, the president of the appellee bank, Ham, telephoned Bumpus and Condra, the president of the Tennessee bank. Appellant contends, and Bumpus' and Condra's deposition reveals that both persons informed Ham, president of appellee bank, that the check was no good and would probably not be paid. On October 25, Ham drove to Tennessee and confronted Ridley in person; Ridley told Ham he could not pay the check until he received other money to cover it. Eventually during the meeting, Ham had Ridley execute two deeds of trust in favor of the appellee bank, securing payment of the check. Ham also went to the Tennessee bank offices to discuss the matter with Bumpus and Condra. While at the offices, Ham saw the check, but he did not take it back to Macon, Georgia, when he returned. On October 31, the appellee bank requested that the Tennessee bank return the check; appellee bank received the check on November 3, and on that date appellee bank sent written notice to the indorser Clements that the check was dishonored.

Appellant contends that from the inception, that is from September 25, when appellee's branch manager called Bumpus at the Tennessee bank to inquire about the check, Bumpus and Condra told appellee bank the check was no good. Appellee bank contends, to the contrary, that appellee's officers were informed that representations had been made that funds to cover the check were forthcoming.

The Tennessee bank cashier, Bumpus, by deposition stated that he repeatedly told appellee's officers the check was no good and was drawn on uncollected funds; in his implied opinion, the check was dishonored throughout that time. The Tennessee bank president, Condra, by deposition, stated that he never told appellee's officers the check was good, and that if he had not been advised otherwise by

appellee bank, the Tennessee bank would have returned the check to appellee bank within three days. *Held:*

1. "Every indorser engages that upon *dishonor* and *any necessary notice of dishonor* and protest he will pay the instrument according to its tenor at the time of his indorsement to the holder." (Emphasis supplied.) Code Ann. § 109A-3—414. Appellee, the collecting bank, is at least a holder of the instrument indorsed by Clements and deposited in the appellee bank by Continental Equity. See *Pazol v. Citizens Nat. Bank,* 110 Ga. App. 319, 322-323 (138 SE2d 442). "Unless excused. . . . notice of any dishonor is necessary to charge any indorser," Code Ann. § 109A-3—501 (2). "Any necessary notice must be given by a bank before its midnight deadline . . . after dishonor or receipt of notice of dishonor." Code Ann. § 109A-3—508 (2). That is, "midnight on its next banking day following the banking day on which it receives the relevant item." Code Ann. § 109A-4—104 (1)(h). "Where without excuse any necessary . . . notice of dishonor is delayed beyond the time when it is due . . . any indorser is discharged." Code Ann. § 109A-3—502 (1). *Samples v. Trust Co. of Ga.,* 118 Ga. App. 307, 308 (163 SE2d 325).

Appellee bank contends the notice of dishonor to Clements on November 3 was timely because it was given within the midnight deadline after appellee bank received the dishonored check from the Tennessee bank, also on November 3. We cannot agree.

Article 3 of the Commercial Code is quite clear that notice of dishonor of an instrument must be given in order to charge any secondary party with liability thereon, within specific time limits of dishonor (see Code Ann. §§ 109A-3—414, 109A-3—501 (2). 109A-3—508 (2). 109A-4—104 (1)(h); 109A-3—502 (1); *Samples,* supra). The principal question thus becomes, when was the check dishonored? Code Ann. § 109A-3—507 provides that "an instrument is dishonored when (a) . . . in [the] case of bank collections the instrument is *seasonably returned* by the midnight deadline (109A-4—301)." (Emphasis supplied.) Code Ann. § 109A-4—301 provides at subsection (3) that "*unless previous notice of dishonor has been sent* an item is dishonored at the time when for purposes of dishonor it is returned or notice sent in accordance with this section." In other words, insofar as the collecting bank is concerned, the check is dishonored when the bank receives it back as having been dishonored, *unless previous notice of dishonor has been sent* (Code Ann. § 109A-4—301 (3)). Code Ann. § 109A-3—508 (3), which is expressly applicable (see Code Ann. § 109A-4—104 (3)) to the Article 4 provision just cited provides that "notice [of dishonor] may be given in a reasonable manner [and] may be oral or written."

It is undisputed that appellee bank, in an effort to expedite

collection of the check, on September 25, sent the check directly to the Tennessee bank with a letter containing the instructions: "Check for collection — Return if not paid in 3 days." Four days later, on September 29, the branch manager of the appellee bank talked by telephone with Bumpus, the Tennessee bank cashier; Bumpus told the appellee's branch manager the check was not good and was drawn on uncollected funds. *On that day, September 29, the Tennessee bank refused to accept and pay the check.* It is alleged by appellee that its officers were "informed that representations had been made that funds for payment would be forthcoming." On that basis appellee gave authority to the Tennessee bank to continue holding the check. The fact remains, though, that on September 29, the Tennessee bank refused to accept the check.

This situation, specifically as it affects the liability or discharge of a secondary party or indorser, is covered by Code Ann. § 109A-3—506, entitled "Time allowed for acceptance or payment." It provides: "(1) Acceptance [the drawee's signed engagement to honor the draft, Code Ann. § 109A-3—410] may be deferred without dishonor until the close of the next business day following presentment. The holder may also in a good faith effort to obtain acceptance and without either dishonor of the instrument or discharge of secondary parties allow postponement of acceptance *for an additional business day.*" (Emphasis supplied.) Code Ann. § 109A-3—506 (2) provides that payment may be deferred without dishonor pending reasonable examination, but payment must be made before the close of business on the day of presentment. The Tennessee bank, on September 29, refused to pay the check, and communicated that fact to the appellee. The Tennessee bank did not "accept" the check within the meaning of Code Ann. § 109A-3—410 and Code Ann. § 109A-3—413 (1); if any claim lies against that bank in favor of the appellee bank for any equivocation by the Tennessee bank which might have caused confusion to the appellee, it is not pertinent here. The clear application of Code Ann. § 109A-3—506 to this case is that, assuming the check was presented on September 29, the check which was refused payment on September 29, was by law dishonored by the Tennessee bank by September 30, and that although the holder, appellee, could in good faith attempt to obtain acceptance for an additional business day, without dishonor and without discharging the indorser (see also Code Ann. § 109A-4—108), after October 1 the indorser was discharged unless necessary notice had been given. The appellee bank was without authority from the indorser (see Code Ann. § 109A-3—507 (4)) to continue re-presenting the check, and therefore had no legal authority to do so without discharging the indorser in the meantime. (See Code Ann. §

109A-3—507 (4)).

The notice of non-acceptance having been conveyed by the Tennessee bank to appellee on September 29, the indorser should have been given notice of dishonor not later than the midnight deadline of the second business day allowed by Code Ann. § 109A-3—506 (1). The instrument was not dishonored as of the time it was returned to the appellee bank on November 3 (see Code Ann. § 109A-4—301 (3)), because the check was not "seasonably returned" (Code Ann. 109A-3—507) but was held back on appellee's instructions and the appellee bank had had previous notice of dishonor (Code Ann. § 109A-4—301(3)). The notice of dishonor to the indorser Clements on November 3 came too late as a matter of law.

The delay in notice would be excused so as to prevent the discharge (Code Ann. § 109A-3—502 (1) (2)) if the appellee bank was "without notice that [the notice of dishonor was] due or [if] the delay [was] caused by circumstances beyond [its] control." Code Ann. § 109A-3—511 (1). The appellee bank, as the undisputed facts show, had notice of the dishonor, and therefore had notice that notice of dishonor was due the indorser. The delay in notice of dishonor to the indorser was not due to circumstances beyond the appellee bank's control (see Code Ann. § 109A-4—108), but was due simply to the bank's failure to give it once the bank itself had notice of the dishonor and was under obligation to take action (see Code Ann. § 109A-4—104 (1)(h)).

What we have distilled here is the specific codal direction of Article 3, with regard to liability of parties (part 4), notice of dishonor (part 5), and discharge (part 6). What is contained in Article 4 (bank deposits and collections), in particular Code Ann. § 109A-4—202, is subject to the provisions of Article 3 (Code Ann. § 109A-4—102 (1)).If Code Ann. § 109A-4—202 conflicted with the provisions of Article 3, explained infra, Code Ann. § 109A-4—202 would prevail (see Code Ann. 109A-4—102 (1)). However, there is no conflict in this legal circumstance. Code Ann. § 109A-4—202 (1) (b) provides "a collecting bank must use ordinary care in . . . sending notice of dishonor. . . after learning that the item has not been paid or accepted, as the case may be." Code Ann. § 109A-4—202 (2) provides: "A collecting bank taking proper action before its midnight deadline following receipt of an item, notice or payment acts seasonably; taking proper action within a reasonably longer time may be seasonable but the bank has the burden of so establishing." Article 3 establishes as a matter of law when dishonor occurs, when notice of dishonor must be given to charge the indorser, and under what circumstances it may be excused so as to discharge the indorser. What is "ordinary care" (Code Ann. § 109A-4—202 (1)), and what is "seasonable" (Code Ann. §

109A-4—202 (2)) in that context is therefore established as a matter of law by Article 3. The "Draftmen's Comment" to UCC § 4-202 explains the provision of Code Ann. § 109A-4—202 (2) by saying, "In the case of time actions, action after the midnight deadline, *but sufficiently in advance of maturity for proper presentation,* is a clear example of a 'reasonably longer time' than is seasonable." This indicates that the leeway provided in Code Ann. § 109A-4—202 must still comport with what is required by law, and if it does not then the action is not seasonable under Code Ann. § 109A-4—202. Any other interpretation would render most of Article 3, dealing with the circumstances under which liability or discharge of an indorser is determined, utterly meaningless.

Moreover, within Article 4 itself the provisions of Code Ann. § 109A-4—108 control the availability of Code Ann. § 109A-4—202 in these circumstances. Code Ann. § 109A-4—108 (1) provides: "Unless otherwise instructed, a collecting bank in a good faith effort to secure payment may . . . waive, modify or extend time limit imposed or permitted by this Act for a period *not in excess of an additional banking day without discharge of secondary parties. . .*" (Emphasis supplied.) It is clear that nothing in Article 4 is intended to deprive the indorser, who may ultimately be liable on an instrument if it is unpaid, of the protection of the timely notice of dishonor which is *necessary to charge* (Code Ann. § 109A-3—501 (2)) him with liability thereon. This clear requirement places no undue burden on the bank, because if it does so, the notice is excused (see Code Ann. §§ 109A-3—502, 109A-3—511); indeed in its certainty, it offers protection to both parties.

It was error to grant summary judgment to appellee bank, and error to deny it to Clements on the issue of timely notice of dishonor, subject to the determination of whether notice was excused.

2. Appellee urges that notice of dishonor to Clements was entirely excused under Code Ann. § 109A-3—511 .(2) because Clements had no reason to expect nor right to require that the instrument be accepted or paid. The record shows that both Ridley, the maker, and Clements, the indorser, were members of the board of directors of Continental Equity. According to Ridley, the $30,000 check was given to Clements for Continental Equity as a loan of "front money" to enable Continental to obtain a loan of $650,000 from Calvin Crown in New York. When Ridley first met Crown, Crown was president of the First Bank of Tehran; then president of the First Bank of London; and the third time Ridley went to New York to see Crown, Crown had "gold mining or something" on his office door. The cashier's checks which Ridley received from Crown, which were to cover the $30,000 check, were somehow no good. The

financial arrangements by which this check was exchanged were obviously complicated and the evidence shows neither that Clements knew the check would not be paid, nor that he "had no inkling" it would not be paid, beyond any issue of material fact. Neither party is entitled to summary judgment on the issue of excused notice under Code Ann. § 109A-3—511 (2), which remains a question of fact for the jury.

*Judgment reversed. Deen, C. J., and Sognier, J., concur.*

ARGUED FEBRUARY 6, 1980 — DECIDED MAY 6, 1980—
REHEARING DENIED JUNE 20, 1980 — 

*Arthur P. Tranakos, Barry L. Zipperman,* for appellant.
*G. McGregor Jordan, Jr.,* for appellee.

ON MOTION FOR REHEARING.

On motion for rehearing, the bank argues for the first time the provision at Code Ann. § 109A-4—301 (3), that "unless previous notice of dishonor has been *sent* an item is dishonored ... when ... it is returned or notice sent in accordance with this section" (emphasis supplied). Bank cites Code Ann. § 109A-1—201 (38) as defining "send" to mean deposit in the mail; therefore, oral notice of dishonor from the Tennessee bank to the appellee bank would not trigger the point of dishonor.

The Georgia Commercial Code, at Code Ann. § 109A-3—508 (3) specifically provides that notice of dishonor may be given in any reasonable manner, and "may be oral or written." It is neither logical nor credible that the legislature meant to defuse this provision, and to render meaningless the other Article 3 and 4 provisions dealing with discharge of indorser's liability within specific time limits of presentment and non-acceptance (see Code Ann. § 109A-3—506, and this case), by providing that dishonor does not occur until written notice of it is "sent." The terms of Code Ann. § 109A-1—201 (38) do not preclude the transmission of oral notice, "if it is received within the time at which it would have arrived if properly sent." Nevertheless, the bank would not prevail, even if we adopted its position that since there was no written notice of dishonor "sent," under Code Ann. § 109A-4—301 (3) dishonor should have occurred when the item was returned on November 3. If the item was not returned until November 3, it was because of the appellee bank's entreaty to the Tennessee bank to keep holding it for acceptance. It is undisputed that the Tennessee bank would have returned it within three days of presentment if the appellee bank had not requested otherwise. See Phelan v. University Nat. Bank, 85 Ill. App. 2d 56 (229

NE2d 374, 378).

In this case, we emphasized that the indisputable fact remains that on September 29, 1978, the appellee bank first received notice of dishonor but the indorser was not notified of this dishonor as required by Code Ann. § 109A-3—508. There was no term in the indorsement on this item allowing a stated time for re-presentment as provided for in Code Ann. § 109A-3—507 (4), and the appellee bank had no authority to re-present it without discharging the indorser. The appellee bank in instructing the Tennessee bank to hold the check, and in re-presenting it at a later date, did so at its own peril.

The bank by delaying the giving of notice of dishonor until November 3, 1978, did not give notice before its midnight deadline after receiving notice itself as required by law, and thereby prohibited the appellant from taking whatever action he might deem best to protect himself. The failure to give requisite notice results in the discharge of the indorser, Code Ann. § 109A-3—502 (1) (a). There still remains the question of fact as to whether Clements knew or had reason to know that the check ultimately would be dishonored and if so, notice of dishonor would be excused.

*Motion for rehearing denied.*