**William JOHNSON, Plaintiff-Appellant,**

v.

**Alan MATEER, John Holmes, R. A. Dietrich, Steven Crockwell, Betty Lieu, et al., all Individuals, Appellees.**

No. 78–1012.

United States Court of Appeals,
Ninth Circuit.

July 3, 1980.

As Amended Aug. 7, 1980.

William E. Coombs, Rialto, Cal., for plaintiff-appellant.

Steven Rood, Deputy Atty. Gen., Los Angeles, Cal., for appellees.

Before GOODWIN, HUG, and FLETCHER, Circuit Judges.

FLETCHER, Circuit Judge:

William Johnson, invoking this court's jurisdiction under 28 U.S.C. § 1291 (1976), appeals from the district court's grant of summary judgment to appellees, employees of the Department of Motor Vehicles for the State of California (DMV), in his suit for damages alleging civil rights violations under 42 U.S.C. § 1983 (1976) and related statutes. Following the state court's refusal to suppress evidence seized from his place of business by employees of the DMV acting without a search warrant, appellant Johnson entered a plea of nolo contendere to charges of criminal violations of the California Motor Vehicle Code. The district court, finding the sole issue in this case to be the legality of the search and seizure, which had been determined adversely to the plaintiff in the state court suppression hearing, held that Johnson was barred by collateral estoppel from relitigating the claim in federal court. We reverse and remand.

■ We decide on two grounds. We find that Johnson has raised genuine factual issues going beyond the allegedly illegal search and seizure. More importantly, we hold that the doctrine of collateral estoppel does not bar the plaintiff from litigating in this section 1983 action the constitutional issues raised by him in the criminal proceeding in state court.

William Johnson, owner of Sunshine Motors, Inc., was a used automobile dealer in Pasadena, licensed by the DMV. Consumer complaints about Johnson's business practices led to a DMV investigation of Johnson that uncovered apparent violations of the California Vehicle Code and California Penal Code. On April 18, 1975, appellee Lieu met Johnson's landlord at the used automobile dealership. Neither Johnson nor his salesmen were present. According to Lieu's testimony at the subsequent suppression hearing, there had been no signs of activity at Sunshine Motors since mid-March: the lot had been cleared of cars and she had been unable to reach Johnson at his office either in person or on the telephone. Acting under the assumption that the premises had been abandoned, Lieu sought to gain entry into the office to reclaim supplies and property issued by the DMV and required by California Vehicle Code section 11721 to be returned to the department once a dealership is abandoned. When the landlord's key failed to unlock the door, Lieu raised the window and she and the landlord climbed through the opening. Lieu cleaned out Johnson's files, taking from the office DMV property—the business license and salesmen's licenses, the record sales book, transfer documents, and dealer plates—but also seizing contracts and work sheets belonging to Johnson.

Misdemeanor complaints were filed against Johnson in Pasadena Municipal Court on August 25, 1975. He was charged with several counts of failure to transfer title and petty theft stemming from his failure to submit to the state transfer and registration fees collected from buyers. Following three days of testimony at a suppression hearing, the court denied Johnson's motion to suppress the evidence obtained in the course of the break-in. The questioning was devoted almost exclusively to the issue of abandonment. The court based its denial of the motion to suppress on a finding that the premises had been abandoned, entitling the DMV to make a warrantless search and seizure.

The state criminal action against Johnson was resolved by a plea of nolo contendere as to one count. All other counts were dismissed. Johnson was fined $100, assessed $25 in costs, ordered to make restitution of $350, and placed on unsupervised probation for one year.

Johnson's complaint in federal court alleged claims under 42 U.S.C. § 1983 (1976) and related statutes, contending that six employees of the DMV conspired and acted in concert to deprive him of rights secured to him by the first, fourth, and fourteenth amendments. The complaint is specific only with regard to the search and seizure. Johnson's affidavit filed in opposition to the motion for summary judgment, however,

amplified his complaint, alleging that the DMV employees systematically and maliciously harassed him with the intent to drive him out of business. He listed a series of acts allegedly committed by one or more of the DMV employees: they seized his business records, retained them for almost a year, and returned only part of them; they advised Johnson's debtors not to pay him; they improperly transferred legal title to buyers who owed Johnson money for automobiles; they attempted surreptitiously to confiscate his tow truck and have it dismantled; they threatened to "pull [his] license off the wall" and later told him, "We've got you out of business now." The district court nevertheless granted summary judgment, concluding that the sole issue in the case was the constitutionality of the search and seizure and that collateral estoppel barred Johnson from relitigating an issue already determined adversely to him at the suppression hearing.

The narrow question before this court is whether the trial court properly granted the defendants' motion for summary judgment. In reviewing an order granting summary judgment, this court must first determine whether the opposing party has shown that a genuine dispute exists as to any material fact. If, on the record, the court finds none, the evidence must be viewed in the light most favorable to the party opposing the motion to determine whether the movant is entitled to prevail as a matter of law. *Reed v. Lockheed Aircraft Corp.*, 613 F.2d 757, 759 (9th Cir. 1980).

In determining whether the district court erred in finding that there were no genuine issues of material fact, we must decide whether the constitutionality of the search and seizure was the sole issue to be decided below or whether Johnson's claim raised

issues not previously litigated[1] and therefore not subject to preclusion under the doctrine of collateral estoppel. Appellees contend that the scope of the claim before the district court was no broader than the issues litigated at the suppression hearing because Johnson's complaint attacked only the constitutionality of the search and seizure and made no other factual allegations.

It is indeed difficult to grasp the precise nature of the vague allegations made in Johnson's complaint. However, Johnson's failure to articulate the bases for his civil rights claim at the pleading stage should not have been fatal to his claim, as his affidavit filed in opposition to the motion for summary judgment made factual allegations regarding property deprivation and harassment (confiscation of the tow truck, retention of business records, interference with contractual relations, and general harassment). The district court should have construed the affidavit as a request pursuant to rule 15(b) of the Federal Rules of Civil Procedure to amend the pleadings out of time and should have determined whether, based on the contents of the affidavit read with the complaint, triable issues of fact existed. *Jackson v. Hayakawa*, 605 F.2d 1121, 1129 (9th Cir. 1979), *cert. denied*, —— U.S. ——, 100 S.Ct. 1601, 63 L.Ed.2d 787 (1980). On remand the complaint should be deemed so amended.

Although we find that appellant has raised other issues, the main thrust of his case is the claimed violation of fourth amendment rights occasioned by the break-in. We disagree that Johnson is collaterally estopped from raising the search and seizure issue in the section 1983 action.

This court has applied doctrines of preclusion to bar litigation of section 1983 claims when the prior action was a state civil proceeding,[2] a state administrative proceed-

---

1. As noted above, the primary focus of the suppression hearing was on the question of abandonment as justification for the warrantless search and seizure. The judge in that proceeding at one point remarked in sustaining an objection to a question regarding the use made of the materials seized: "You are seeking

to suppress whatever they took. What they did with it and precisely what they took seems to me to be irrelevant."

2. *E. g., Scoggin v. Schrunk*, 522 F.2d 436 (9th Cir. 1975), *cert. denied*, 423 U.S. 1066, 96 S.Ct.

ing,[3] and a federal civil proceeding claiming violation of civil rights.[4] However, we have not barred a plaintiff in a 1983 action from litigating issues previously raised by him as a defendant in a state criminal proceeding.

In *Ney v. California*, 439 F.2d 1285 (9th Cir. 1971), the state contended that the appellant, who had been convicted in a state criminal proceeding, was barred by res judicata in a 1983 action[5] from relitigating his claims that he was questioned without being advised of his rights, was refused consultation with counsel, and, by alteration of electronic tapes, was made to appear to have confessed. The court found that these issues had not been decided in the state proceeding. Thus the requirements for res judicata had not been met.[6] The court went further, however, and expressed misgivings about the applicability of the doctrine in civil rights actions:

> [I]f a successful state prosecution, based upon the use of information obtained by violating the defendant's constitutional rights, could bar a civil rights action

against the police for violating his rights, either by analogy to the law of malicious prosecution or on theories of res judicata or estoppel by judgment, the Civil Rights Act would, in many cases, be a dead letter. The rule used to be that evidence obtained in violation of constitutional rights was admissible; that the proper remedies were prosecution of the offending officials or an action for damages by the injured citizen. The Civil Rights Act long antedates the exclusionary rule; the creation of that rule by the Supreme Court, first for the federal courts and later for the state courts, was not designed to, and did not, limit the remedies created by the Congress when it enacted the Civil Rights Act.

439 F.2d at 1288.

The United States Supreme Court has not ruled directly on the applicability of collateral estoppel or res judicata to bar relitigation in civil rights actions of issues previously litigated in state court proceedings.[7] Although there is ample authority in lower court decisions to support application of

---

807, 46 L.Ed.2d 657 (1976); *Chism v. Price*, 457 F.2d 1037 (9th Cir. 1972).

**3.** *Francisco Enterprises, Inc. v. Kirby*, 482 F.2d 481 (9th Cir. 1973), *cert. denied*, 415 U.S. 916, 94 S.Ct. 1413, 39 L.Ed.2d 471 (1974).

**4.** *Stewart v. Minnick*, 409 F.2d 826 (9th Cir. 1969).

**5.** Although often used interchangeably, the terms "res judicata" and "collateral estoppel" apply to related but distinct doctrines. Under res judicata, parties to a final judgment or their privies are barred from bringing further claims based on the same cause of action. *Montana v. United States*, 440 U.S. 147, 153, 99 S.Ct. 970, 973, 59 L.Ed.2d 210, 216 (1979); *Cromwell v. County of Sac*, 94 U.S. 351, 352–53, 24 L.Ed. 195 (1877). Under collateral estoppel, an actual and necessary determination of an issue by a court of competent jurisdiction is conclusive in subsequent cases based on a different cause of action but involving a party to the prior litigation. *Montana v. United States*, 440 U.S. 147, 153, 99 S.Ct. 970, 973, 59 L.Ed.2d 210, 216 (1979); *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326 n.5, 99 S.Ct. 645, 649 n.5, 58 L.Ed.2d 552, 559 (1979). The preclusion issue in *Ney* could be more accurately described as a question of collateral estoppel.

**6.** *See also Jackson v. Official Representatives and Employees of the Los Angeles Police Department*, 487 F.2d 885 (9th Cir. 1973) (collateral estoppel inapplicable because search and seizure claims not considered on merits in criminal trial).

**7.** Individual justices have indicated their misgivings and have stressed the need for the Court to resolve the issue. *Preiser v. Rodriguez*, 411 U.S. 475, 509 n.14, 93 S.Ct. 1827, 1846 n.14, 36 L.Ed.2d 439 (1973) (Brennan, J., dissenting); *Lauchli v. United States*, 405 U.S. 965, 967–68, 92 S.Ct. 1182, 1183, 31 L.Ed.2d 241 (1972) (Douglas, J., dissenting from denial of certiorari); *Florida State Board v. Mack*, 401 U.S. 960, 961, 91 S.Ct. 971, 28 L.Ed.2d 245 (1971) (White, J., dissenting from denial of certiorari). It has been suggested that the Court may have foreclosed by implication, in *Huffman v. Pursue, Ltd.*, 420 U.S. 592, 606 n.18, 95 S.Ct. 1200, 1209 n.18, 43 L.Ed.2d 482 (1975), section 1983 actions as avenues of attack on the finality of state civil judgments. *See Developments in the Law—Section 1983 and Federalism*, 90 Harv.L.Rev. 1133, 1331 n.1, 1336 n.27, 1337 (1977).

preclusion doctrines in section 1983 actions,[8] the better reasoned opinions differentiate between invoking collateral estoppel to bar relitigation of claims previously litigated in a civil proceeding and those raised by a criminal defendant in a state prosecution. *See, e. g., Fernandez v. Trias Monge,* 586 F.2d 848, 854–55 (1st Cir. 1978); *Meadows v. Evans,* 550 F.2d 345, 350 (5th Cir.) (Tjoflat, J., concurring and dissenting), *cert. denied,* 434 U.S. 969, 98 S.Ct. 517, 54 L.Ed.2d 457 (1977); *Mastracchio v. Ricci,* 498 F.2d 1257, 1259–60 (1st Cir. 1974), *cert. denied,* 420 U.S. 909, 95 S.Ct. 828, 42 L.Ed.2d 838 (1975). A defendant involuntarily before the court in a criminal proceeding should not be required to choose between raising his constitutional defense in state court and bringing a federal civil rights action. In other words, the price of his constitutional claim in federal court should not be a heightened risk of conviction in state court. *See Developments in the Law—Section 1983 and Federalism,* 90 Harv.L.Rev. 1133, 1340 (1977). Most notable for our purposes are those cases in which courts have issued a caveat regarding the application of collateral estoppel when a former criminal defendant cannot raise his constitutional claims in a federal habeas proceeding, either because he is not in custody or because the issue he wishes to raise is not cognizable as a basis for federal habeas corpus relief. *Rimmer v. Fayetteville Police Department,* 567 F.2d 273, 276 (4th Cir. 1977); *Meadows v. Evans,* 550 F.2d at 345; *Moran v. Mitchell,* 354 F.Supp. 86, 88–89 (E.D.Va.1973). Citing to this court's opinion in *Ney v. California,* 439 F.2d 1285 (9th Cir. 1971), the district court in *Moran* echoed our concern that the intent of the Civil Rights Act be furthered by providing a federal remedy to litigants with claims of constitutional deprivation.

The Eighth Circuit Court of Appeals has recently confronted the question posed to us, a question which had troubled these courts only hypothetically: when a section 1983 action provides the only access to federal court for a defendant in a state criminal action seeking redress for violation of constitutional rights, should collateral estoppel operate to deny that access? In *McCurry v. Allen,* 606 F.2d 795 (8th Cir. 1979), *cert. granted,* —— U.S. ——, 100 S.Ct. 1012, 62 L.Ed.2d 751 (1980), the plaintiff sued individual police officers under section 1983, alleging an unconstitutional search and seizure and an assault at the time of arrest. The district court granted summary judgment for defendants because the sole issue in the case, the constitutionality of the search and seizure, had been determined adversely to the plaintiff in a state criminal proceeding. The appellate court reversed and remanded, finding that the legality of the search and seizure had not been the sole issue below and that the court had overlooked the allegation of assault. But more significantly, the court refused to be shackled by the state court's ruling on the fourth amendment issue. The court reasoned that because the Supreme Court's holding in *Stone v. Powell,* 428 U.S. 465, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976), now precludes, except in limited circumstances, the raising of search and seizure issues in federal habeas corpus proceedings, victims of unconstitutional searches and seizures should not be completely foreclosed from a federal forum by the application of collateral estoppel. Indeed, the court noted that Justice Burger in his concurring opinion in *Stone v. Powell* partially justified the refusal to hear the habeas petition on the basis that alternative remedies were still available to the victim.[9] Citing the Su-

8. *E. g., Robbins v. District Court,* 592 F.2d 1015 (8th Cir.), *cert. denied,* 444 U.S. 852, 100 S.Ct. 107, 62 L.Ed.2d 69 (1979); *Turco v. Monroe County Bar Association,* 554 F.2d 515 (2d Cir.), *cert. denied,* 434 U.S. 834, 98 S.Ct. 122, 54 L.Ed.2d 95 (1977); *Thistlethwaite v. New York,* 497 F.2d 339 (2d Cir.), *cert. denied,* 419 U.S. 1093, 95 S.Ct. 686, 42 L.Ed.2d 686 (1974); *Brown v. Chastain,* 416 F.2d 1012 (5th Cir.

1969), *cert. denied,* 397 U.S. 951, 90 S.Ct. 976, 25 L.Ed.2d 134 (1970).

9. It is also significant to note the *McCurry* court's observation that only two of the seven circuits which have held collateral estoppel applicable to section 1983 actions were confronted with search and seizure claims and that in both instances the decisions predated *Stone v. Powell. See* 606 F.2d at 798 (citing *Metros v.*

preme Court's opinion in *Mitchum v. Foster*, 407 U.S. 225, 242, 92 S.Ct. 2151, 2162, 32 L.Ed.2d 705 (1972), for the proposition that the federal courts are the guardians of federal rights, the eighth circuit court concluded, "[I]t is our duty to consider fully, unencumbered by the doctrine of collateral estoppel, appellant's § 1983 claims." 606 F.2d at 799.[10]

We find the reasoning of the court in *McCurry* to be persuasive and wholly consistent with the views we expressed earlier in *Ney v. California*, 439 F.2d 1285, 1288 (9th Cir. 1971). We too have concern that the federal courts' essential oversight of claims of violation of federal rights by state agents not be impaired. In this regard we are mindful of the genesis of section 1983 as described by the Supreme Court in *Monroe v. Pape*, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961):

> It is abundantly clear that one reason the legislation was passed was to afford a federal right in federal courts because, by reason of prejudice, passion, neglect, intolerance or otherwise, state laws might not be enforced and the claims of citizens to the enjoyment of rights, privileges, and immunities guaranteed by the Fourteenth Amendment might be denied by the state agencies.

365 U.S. at 180, 81 S.Ct. at 480, 5 L.Ed.2d 501.

We hold that Johnson's assertion in this section 1983 action of his fourth amendment claim that the search of his premises was illegal is not foreclosed by collateral estoppel as a consequence of his earlier assertion of that contention in a suppression hearing in his defense against criminal charges in state court. To rule otherwise in this case would deprive Johnson of his access to a federal forum for his federal constitutional claim.

Appellant Johnson lacks the capacity to vindicate his rights by a federal habeas corpus petition because his claim is based on an allegedly unconstitutional search and seizure, and the state afforded him a full and fair opportunity to litigate his fourth amendment claim. *See Stone v. Powell*, 428 U.S. 465, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976). As he has no appeal as of right to the Supreme Court, 28 U.S.C. § 1257 (1976), a civil rights action affords him his only access to a federal court. To deny Johnson a hearing in federal court on the constitutionality of the break-in at his dealership would defeat the intent of section 1983 and ignore our caveat in *Ney* against substituting the exclusionary rule for the remedies created by the Civil Rights Act.[11] Consequently, we conclude that the district court erred in granting summary judgment on the basis of collateral estoppel.

We reverse and remand for proceedings consistent with this opinion.

---

10. The court ultimately chose to abstain to allow the state courts to review the conviction and the legality of the search.

*United States District Court*, 441 F.2d 313 (10th Cir. 1970), and *Mulligan v. Schlachter*, 389 F.2d 231 (6th Cir. 1968)). The court further observed that the expressed basis in many of the cases for concluding that collateral estoppel should apply to section 1983 actions was the availability of federal habeas corpus relief. 606 F.2d at 798.

11. It is interesting to note in this connection Justice Burger's dissent in *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388, 421–23, 91 S.Ct. 1999, 2017–2018, 29 L.Ed.2d 619 (1971) (Burger., C. J., dissenting), wherein he expresses his approval of remedies compensating the victims of fourth amendment violations as a means of providing deterrence and appropriate relief to the victims.