David H. SMALLMAN and Tommie S. Smallman, Plaintiffs–Appellants,

v.

HOME FEDERAL SAVINGS BANK OF TENNESSEE, Defendant–Appellant.

Court of Appeals of Tennessee, Eastern Section.

Nov. 21, 1989.

Rehearing Denied Dec. 20, 1989.

Application for Permission to Appeal Denied by Supreme Court Feb. 26, 1990.

David A. Lufkin, Knoxville, for plaintiffs-appellants.

W.W. Davis, Jr., Knoxville, for defendant-appellant.

## OPINION

GODDARD, Judge.

Home Federal Savings Bank was sued by David Smallman and his wife Tommie after Home Federal charged back funds from the Smallmans' checking account because a check in the amount of $703.87 deposited in their account was returned unpaid.[1] After the charge-back 14 outstanding checks written by the Smallmans on their account were returned because of insufficient funds. The jury awarded the Smallmans $703.87,[2] the amount of the check, and $30,-000 in other damages. Both sides have appealed.

Home Federal insists on appeal that the Trial Court erred in failing to direct a verdict as to the amount of the check and the other damages claimed to have been suffered by the Smallmans, in admitting evidence of Home Federal's net worth and in charging the jury that it might award damages for embarrassment and humiliation. The Smallmans insist that the Court erred in directing a verdict for Home Federal as to their punitive damage claim.

The facts are essentially undisputed. The Smallmans made a sale of some business inventory to Linda Petruzello, a sister-in-law of a friend of the Smallmans, for $703.87. Ms. Petruzello tendered a check dated April 18, 1985, drawn on AmSouth Bank in Alabama in that amount to the Smallmans which they deposited in their checking account at Home Federal on April 22. Home Federal then submitted the check for processing and collection. This process involved the check first going to First American National Bank, then to First Tennessee Bank, then to the Federal Reserve Bank of Atlanta, then to AmSouth Bank which refused to pay the check because Ms. Petruzello's account contained insufficient funds. At some point in the return process to Home Federal the check was lost in the mail.

On July 30, slightly more than three months after it was deposited, Home Federal received a photocopy of the check and notice that the check was being returned for non-payment. It received no explanation for the delay. Believing that the check had not been processed in a timely fashion, Gary Underwood, an officer of Home Federal, embarked on a course of conduct designed to collect the check because he thought that it was just a problem among the banks that were involved in the collection process. The Smallmans were not notified of any potential problem with the check when Home Federal received the notice.

On August 30, more than four months after the check was deposited, Home Federal received a second notice that the check

---

1. Originally named as defendants, Linda Petruzello, the maker of the returned check, First Tennessee Bank, First American Bank and AmSouth Bank were dismissed for various reasons.

2. Although the judgment entered by the Trial Court states that the jury awarded $703.89 for the check, the jury foreman stated that the amount was $703.87. The amount of the check was $703.87.

would not be paid and that a time delay had not occurred relative to collection but that the check had been lost in the return process to Home Federal.[3] The dishonor notice to the Smallmans was prepared on September 5, and received on September 12 or 13 in an envelope dated September 10.

On Sunday, September 8, the Smallmans tried to withdraw cash from an automatic teller machine but the machine showed a zero balance despite a recent deposit of $900. The Smallmans testified that they had no knowledge of dishonor of the Petruzello check until September 9 when Mr. Smallman contacted Mr. Underwood at Home Federal to inquire about the zero balance on the ATM machine. It was then that Mr. Underwood informed the Smallmans that the Petruzello check had not cleared and $703.87 had been taken out of their account. The charge-back occurred on September 5.

Because of the charge-back, the Smallmans had 14 checks returned unpaid, all but two of which were written prior to the conversation on September 9 between Mr. Underwood and the Smallmans which is the point in time that the Smallmans received actual notice that the check had been returned unpaid and that their account had been charged back. The Smallmans had employed counsel on or before the date they received the written notice and notified Home Federal, in accordance with their counsel's advice, that they would be making no further deposits in their account. The account, consequently, was closed on September 20.

The Smallmans offered no proof to show that the check could have been collected had they received timely notice of dishonor.

At trial, Home Federal's motion for a directed verdict was denied. The evidence adduced included evidence of the bank's net worth which was admitted over Home Federal's objections. A verdict was rendered in favor of the Smallmans as hereinbefore stated.

We now turn to the first issue raised by Home Federal questioning whether a directed verdict should have been granted in its favor at the close of all the proof. In support of its position, Home Federal asserts that: (1) there was no evidence to show that it was negligent in handling the check; (2) even if there was proof sufficient to establish negligence, it could charge-back on the unpaid item anyway; (3) the Plaintiffs failed to establish damages within the purview of T.C.A. 47–4–103(5):

> (5) The measure of damages for failure to exercise ordinary care in handling an item is the amount of the item reduced by an amount which could not have been realized by the use of ordinary care, and where there is bad faith it includes other damages, if any, suffered by the party as a proximate consequence.

■ T.C.A. 47–4–202 imposes a duty of ordinary care on a collecting bank in notifying its customer of non-payment or dishonor. Also of importance here is T.C.A. 47–4–212(1)[4] which permits a bank to charge-back the amount of any credit extended to a customer's account "if by its midnight deadline or within a longer reasonable time after it learns the facts it returns the item or sends notification of the facts." The midnight deadline is "midnight on its next banking day following the banking day on

---

**3.** The undisputed proof showed that if an item is lost in the mail no liability attaches to any of the banks in the chain of collection.

**4.** *47–4–212. Right of charge-back or refund.—* (1) If a collecting bank has made provisional settlement with its customer for an item and itself fails by reason of dishonor, suspension of payments by a bank or otherwise to receive a settlement for the item which is or becomes final, the bank may revoke the settlement given by it, charge-back the amount of any credit given for the item to its customer's account or obtain refund from its customer whether or not it is able to return the items if by its midnight deadline or within a longer reasonable time after it learns the facts it returns the item or sends notification of the facts. These rights to revoke, charge-back and obtain refund terminate if and when a settlement for the item received by the bank is or becomes final (subsection (3) of § 47–4–211 and subsections (2) and (3) of § 47–4–213).

which it receives the relevant item or notice or from which the time for taking action commences to run, whichever is later." T.C.A. 47–4–104(1)(h).

August 30, when the copy of the check was returned a second time, was a Friday, and due to the Labor Day Holiday on September 2, the midnight deadline was Tuesday, September 3. On that date, which was the next banking day, Mr. Underwood attempted to contact AmSouth, the Bank upon which the check was drawn, to determine if the check would clear. Upon learning that it would not he decided that a charge-back was in order. The charge-back was effected on September 5.

As to Home Federal's first point under the first issue, the jury could reasonably find Home Federal was negligent in failing to notify the Smallmans of the dishonored check prior to the midnight deadline.

Apropos of T.C.A. 47–4–212(1) relative to charge-back, the authors of Anderson's Uniform Commercial Code (Volume 3, Page 261) make the following observation:

§ 4–212:6. Exercise of right.

In order to exercise the right of charging back a credit provisionally given to its customer, the collecting bank must act before its midnight deadline. If the bank does not learn of the facts justifying such action within time to act before that deadline, it may act after the deadline has passed if it does so within a reasonable time after it learns of the facts justifying such action against its customer.

Notwithstanding the foregoing, Home Federal argues that the measure of damages is found in T.C.A. 47–4–103(5), hereinbefore set out.

It argues that in view of the fact the Smallmans adduced no proof to show that they suffered damages because of the negligence of Home Federal they are not entitled to recover.

If the suit were predicated upon negligence other than failure to meet the midnight deadline, we would be inclined to agree. However, the real question is whether Home Federal was entitled to charge-back notwithstanding its failure to meet the midnight deadline and its failure to show it learned any facts justifying an extension thereof.

It seems clear that Home Federal's right to charge back depends on whether the statute establishes a condition precedent or whether it defines the duty of care relative to the right of charge-back, which also would require a showing of damages by reason of the breach of the duty.

The cases which we have found disclose a split of authority. *Fromer Distributors, Inc. v. Bankers Trust Co.*, 36 A.D.2d 840, 321 N.Y.S.2d 428 (1971); *North Carolina Nat. Bank v. Harwell*, 38 N.C.App. 190, 247 S.E.2d 720 (1978); *First Georgia Bank v. Webster*, 168 Ga.App. 307, 308 S.E.2d 579 (1983), and *Dozier v. First Ala. Bank of Montgomery, N.A.*, 363 So.2d 781 (Ala. Civ.App.1978), hold that meeting the midnight deadline is a condition precedent for charging back. Two Federal cases, *Appliance Buyers Credit Corp. v. Prospect Nat. Bank*, 708 F.2d 290 (7th Cir.1983), and *Northpark Nat. Bank v. Bankers Trust Co.*, 572 F.Supp. 524 (S.D.N.Y.1983), hold otherwise.

Our reading of the statute persuades us that the majority view above expressed is the proper one and that under the plain language of the statute the Bank is not entitled to charge-back a returned check unless it meets the requirements as to the midnight deadline.

This is not intended to say, and we are not called upon to determine whether a bank would be entitled to recover from a depositor under the statute authorizing recovery against endorsers, T.C.A. 47–3–414[5], but hold only that a bank which misses its midnight deadline is precluded

---

5. *47–3–414. Contract of endorser—Order of liability.*—(1) Unless the endorsement otherwise

specifies (as by such words as "without recourse") every endorser engages that upon dis-

from charging back against the depositor's account.

■ It is appropriate to discuss together Home Federal's insistence as to the other damages and the Smallmans' insistence as to their right to have the question of punitive damage determined by the jury.

The Smallmans' right to additional damages beyond the amount of the check is governed by T.C.A. 47–4–103(5), hereinbefore set out.

In answer to a question by a juror after the jury had deliberated a period of time, the Trial Court, in an attempt to describe bad faith which would entitle the Smallmans to other damages, told the jury the following:

> This law goes on and says, "Where there is bad faith, it includes other damages, if any, suffered by the Plaintiff as a proximate consequence." Bad faith—I previously defined for you good faith. Good faith under the law means honesty in fact in the conduct or transaction concerned. So, bad faith would be dishonesty or willful and wanton misconduct or intentional wrongful conduct, intentional wrongful conduct done with the knowledge that serious damage would probably result or with willful and wanton disregard of possible results.

In all deference to the Trial Court we are candid to say that the foregoing would appear to us to be a classic statement of factors justifying an award of punitive damages. We thus conclude that either the Trial Court was in error in submitting the question of bad faith to the jury or in error in not submitting the question of punitive damages.

Counsel for the Smallmans' principal assertion that they are entitled to damages for bad faith as well as punitive damages is based upon their contention that Home Federal laid in wait, so to speak, to pounce on their meager checking account after watching it for a number of days until they had made a deposit sufficient to satisfy the returned check. The fallacy of this argument is that from the date it was learned on September 3 that the check would not clear after it had been returned the second time, until it was charged back, there were sufficient funds in the account to satisfy the check.

Additionally, there are the following undisputed facts which belie any contention that Home Federal was guilty of bad faith:

1. An officer of Home Federal offered to hold the Smallmans' checks a few days to enable them to cover them with a deposit.

2. Home Federal waived all "not sufficient funds" charges against the Smallmans' account and credited their account accordingly.

3. An official of Home Federal offered to contact individuals or firms where the Smallmans' checks had been returned and explain to the recipients the circumstances surrounding their return.

We accordingly conclude the Trial Court was correct in directing a verdict as to punitive damages and that he likewise should have directed one as to damages predicated upon bad faith.

In view of our disposition of the foregoing issues, it is unnecessary that we address the other issues raised by Home Federal.

The Trial Court is accordingly affirmed in part, reversed in part, and the cause remanded for collection of the judgment and costs below. Costs of appeal are adjudged one-half to the Smallmans and one-half to Home Federal.

SANDERS, P.J. (E.S.), and WILLIAM H. INMAN, Special Judge, concur.

---

honor and any necessary notice of dishonor and protest he will pay the instrument according to its tenor at the time of his endorsement to the holder or to any subsequent endorser who takes it up, even though the endorser who takes it up was not obligated to do so.

(2) Unless they otherwise agree endorsers are liable to one another in the order in which they endorse, which is presumed to be the order in which their signatures appear on the instrument.

## OPINION ON PETITION TO REHEAR

The Plaintiffs file a motion to rehear which, because it reargues matters fully considered by the Court in its opinion, is denied at their costs.

SANDERS, P.J. (E.S.), and WILLIAM H. INMAN, Special Judge, concur.