**LIBERTY BANK AND TRUST COMPANY OF OKLAHOMA CITY, N.A., Appellee,**

v.

**Osher BACHRACH, Appellant.**

No. 81949.

Supreme Court of Oklahoma.

Feb. 27, 1996.

---

Rodney D. Watson, Rodney D. Watson & Associates, P.C., Norman, for Appellant.

James K. Larimore and Scott G. Robelen, Durbin, Larimore & Bialick, P.C., Oklahoma City, for Appellee.

HODGES, Justice.

## I. PROCEDURE BELOW

The plaintiff, Liberty Bank and Trust Company of Oklahoma City (Liberty), brought suit against defendant, Osher Bachrach (Bachrach), as an indorser of a check returned for insufficient funds and as a depositor for reimbursement of an overdrawn account. Liberty filed a motion for partial summary adjudication in the trial court. Bachrach opposed the motion arguing material issues of fact were in dispute. The trial court granted judgment in favor of Liberty. The Court of Appeals affirmed.

## II. ISSUE

The issue in this case is whether summary judgment was proper. We find that the trial court erred in granting judgment in favor of the plaintiff.

## III. FACTS

The undisputed material facts of this case are as follows. The defendant, Osher Bachrach, is a lawyer who maintains a trust account[1] in Liberty. Bachrach signed the depositor's signature card of Liberty whereby agreeing to the terms of the depository agreement. The depository agreement provided that all deposits were provisionally credited to the account. The agreement further provided Liberty could charge back credits to the account even if an overdraft occurred.

On June 24, 1992, Bachrach deposited in his trust account a check of $15,000 from Janice K. Whitefield which was made to him. The check was for restitution in a criminal matter. On June 26, Bachrach purchased seven cashier's checks totaling $12,255.86 from the funds in his trust account.

Liberty first received notice on June 29, 1992 that there were insufficient funds in Whitefield's account to cover the check to Bachrach. It received the second notice on July 2. Liberty did not give Bachrach notice of the insufficient funds until July 3, when it mailed a notice of dishonor to Bachrach. He received the notice on July 7. On July 6, while attempting to withdraw funds for another cashier's check, Bachrach was orally informed of the dishonor of the $15,000 check.

Liberty alleges Bachrach agreed to sign a promissory note for the deficiency in his account. Bachrach argues Liberty attempted to coerce him into signing a promissory note but he refused. However, Liberty has not pursued a claim before this Court on this alleged agreement.

Liberty filed suit alleging Bachrach was liable as an indorser of the check and under the depository agreement. Bachrach answered that Liberty had failed to give him timely notice after the check was dishonored the second time, but he did not raise the defense that Liberty had failed to give notice after it learned of the dishonor on June 29. Bachrach filed a counterclaim which he dismissed without prejudice.

## IV. SUMMARY JUDGMENT

■ Summary judgment is proper when "there is no substantial controversy as to any material fact." Rules for District Courts of Oklahoma, Okla.Stat. tit. 12, ch. 2, app. 1, rule 13 (1991). It is incumbent on the moving party to present evidentiary material to support its allegation that no genuine material facts are in dispute. *Id.* Only when the moving party has met this requirement does

---

1. A trust account is an account in which a lawyer deposits a client's funds. Lawyers are required to maintain separate accounts under rule 1.15 of the Oklahoma Rules of Professional Conduct. Okla.Stat. tit. 5, ch. 1, app. 3-A, rule 1.15 (1991).

the obligation shift to the non-moving party to show that a controversy as to the material facts exist. *Id.*

## V. Failure to Plead Notice as an Affirmative Defense

■ Failure to give notice of dishonor is an affirmative defense. *See* Okla.Stat. tit. 12, §§ 2008, 2012(B) (1991). Section 2008(C) requires affirmative defenses to be set forth affirmatively in responsive pleadings. This section must be read as part of the statutory scheme and not in isolation. *Brown v. Ford,* 905 P.2d 223, 229 (Okla.1995). Section 2015(B) allows pleadings to be treated as amended to conform to the evidence presented by either express or implied consent of the parties.

In *United States ex rel. Schumer v. Hughes Aircraft Co.,* 63 F.3d 1512 (9th Cir. 1995), the plaintiff failed to raise certain claims in his complaint but raised the claims in the response to a motion for summary judgment. The court concluded: "[W]e consider them because when a party raises a claim in materials filed in opposition to a motion for summary judgment, the district court should treat the filing as a request to amend the pleading...." *Id.* at 1524; *Johnson v. Mateer,* 625 F.2d 240, 242 (9th Cir. 1980).

■ The summary judgment motion and the response, along with the accompanying briefs and the transcript of the hearing on the motion, evidence that Liberty's failure to give notice of the first dishonor was litigated with the parties' consent. The purpose of the Pleading Code is to give fair notice of the claims presented. *Indiana Nat'l Bank v. DHS,* 880 P.2d 371, 375 (Okla.1994). Here, Liberty had fair notice of the claim. We find the answer should be treated as amended to include the affirmative defense of failure to give timely notice of the first dishonor. Okla.Stat. tit. 12, § 2015(B) (1991).

## VI. Liability as a Depositor

■ Section 4–214 of title 12A applies to deposits, defines the liability of banks for failure to give notice of dishonor of a check to a depositor, and allows for the provisional settlement of deposits made to an account. Section 4–214(a) provides:

If a collecting bank has made provisional settlement with its customer for an item and fails by reason of dishonor, suspension of payments by a bank, or otherwise to receive settlement for the item which is or becomes final, the bank may revoke the settlement given by it, charge back the amount of any credit given for the item to its customer's account, or obtain refund from its customer, whether or not it is able to return the item, *if by its midnight deadline or within a longer reasonable time after it learns the facts it returns the item or sends notification of the facts. If the return or notice is delayed beyond the bank's midnight deadline or a longer reasonable time after it learns the facts, the bank may revoke the settlement, charge back the credit, or obtain refund from its customer, but it is liable for any loss resulting from the delay....*

(Emphasis added.)

The midnight deadline is defined in section 4–104(a)(10) as "midnight on [a bank's] next banking day following the banking day on which [a bank] receives the relevant item or notice...." In this case, Liberty learned that the check had been dishonored on June, 29, 1992. It is undisputed that Liberty did not give notice until July 3, 1992.

Liberty contends that it was not statutorily required to give notice of first dishonor because (1) there is a custom in the industry of not giving notice of dishonor to the depositor until after a bank resubmits the check for payment and receives a second notice of dishonor, and (2) the depository agreement supersedes the statutory requirement of giving notice of dishonor. We disagree.

As stated above, when a bank makes a provisional settlement and fails to give timely notice, it becomes liable for damages resulting from its failure. Okla.Stat. tit. 12A at § 4–214. Seasonable notice is notice given

by "its midnight deadline or ... a longer reasonable time after it learns the facts." *Id.* An example of a reasonably longer time is found in comment 3 to section 4–202: "In the case of time items, action after the midnight deadline, but sufficiently in advance of maturity for proper presentation, is a clear example of a 'reasonably longer time' that is timely." Liberty does not argue that it falls under this provision.

■ The custom asserted by Liberty is repugnant to the statutory requirement that notice of dishonor be given by the midnight deadline. *See id.* at 4–214. "Custom or usage repugnant to expressed provisions of a statute is void." *Hull v. Sun Refining and Marketing Co.*, 789 P.2d 1272, 1278 (Okla. 1989). When there is a conflict between a statute and a custom and usage, the statute governs. *Id.* Custom in the industry does not excuse Liberty's failure to give notice of the first dishonor.

■ Liberty also argues that under title 12A it may alter the statutory obligations imposed on it. Liberty continues that the depositor's agreement right of charge back controls over section 4–214. Liberty relies on section 1–102 which allows the effect of the provisions of title 12A to be altered by agreement. Section 4–103 specifically addresses the provisions of article 4 and allows the effect of the provisions in article 4 to be altered by agreement. Because section 4–103 specifically addresses article 4, it is controlling in this case. *State ex rel. Trimble v. City of Moore*, 818 P.2d 889, 899 (Okla.1991).

Section 4–103 provides:

The effect of the provisions of this article may be varied by agreement, but the parties to the agreement cannot disclaim a bank's responsibility for its lack of good faith or failure to exercise ordinary care or limit the measure of damages for the lack or failure; however, the parties may determine by agreement the standards by which the bank's responsibility is to be measured if those standards are not manifestly unreasonable.

Section 4–202 provides:

(a) A collecting bank must exercise ordinary care in:

\* \* \* \* \* \*

(2) Sending notice of dishonor or nonpayment or returning an item other than a documentary draft to the bank's transferor after learning that the item has not been paid or accepted, as the case may be;

\* \* \* \* \* \*

(b) A collecting bank exercises ordinary care under subsection (a) of this section by taking proper action before its midnight deadline following receipt of an item, notice, or settlement. Taking proper action within a reasonably longer time may constitute the exercise of ordinary care, but the bank has the burden of establishing timeliness.

Because Liberty cannot disclaim its responsibility to exercise ordinary care and ordinary care requires timely notice of dishonor, Liberty cannot alter its statutory duty to give notice by its midnight deadline or with a reasonably longer time by an agreement. *See Clements v. Central Bank*, 155 Ga.App. 27, 270 S.E.2d 194, 199 (1980); *Broadway Nat'l Bank v. Barton–Russell Corp.*, 154 Misc.2d 181, 585 N.Y.S.2d 933, 939 (N.Y.Sup.Ct.1992).

In *Reynolds–Wilson Lumber Co. v. Peoples Nat'l Bank*, 699 P.2d 146 (Okla.1985), the payor bank failed to give notice of dishonor after the second presentment. This Court held that section 4–302(a) required a payor bank to give notice of dishonor after every presentment. Section 4–302(a) provides that a payor bank is accountable for a item when the bank fails to return the item or give notice of dishonor by the midnight deadline.

■ Even if the duty to give notice of dishonor could be disclaimed by agreement, nothing in the agreement waives Bachrach's right to notice of dishonor. The agreement merely is a restatement of Liberty's statutory option to provisionally credit an account. The restatement of this right in the depository in and of itself did not relieve Liberty of the responsibility to give notice of dishonor after it first received notice of insufficient funds on June 29, 1992.

## VII. Damages

██ Section 4–214(a) provides that a bank may charge back the amount of a provisional credit to a depositor's account "if by its midnight deadline or within a longer reasonable time after it learns the facts it returns the item or sends notification of the facts." A majority of courts have interpreted this provision as establishing a condition precedent, timely notice of dishonor, before a bank can exercise its right to charge back. *Smallman v. Home Federal Savings Bank,* 786 S.W.2d 954, 957 (Tenn.Ct.App.1989). This construction is inconsistent with the other provisions of article 4. *See Ross v. Peters,* 846 P.2d 1107, 1112 (Okla.1993).

Section 4–214(a) provides: "If the return or notice is delayed beyond the bank's midnight deadline or a longer reasonable time after it learns the facts, the bank may revoke the settlement, charge back the credit, or obtain refund from its customer, but it is liable for any loss resulting from the delay." Section 4–214(d) provides: "The right to charge back is not affected by ... [f]ailure by any bank to exercise ordinary care with respect to the item, but a bank so failing remains liable." Failure to exercise ordinary care includes failure to give notice before the banks midnight deadline or, if it does not learn of the dishonor in time to act before the midnight deadline, within a reasonable time after it learns the facts. Okla.Stat. tit. 12A at § 4–202(a), (b).

Section 4–103(e) provides: "The measure of damages for failure to exercise ordinary care in handling an item is the amount of the item reduced by an amount that could not have been realized by the exercise of ordinary care." The depositor must prove the damages caused by the bank's failure to give timely notice. *Appliance Buyers Credit Corp. v. Prospect Nat'l Bank of Peoria,* 708 F.2d 290, 294 (7th Cir.1983). Pursuant to section 4–214, Liberty may charge back the provisional credit but is nonetheless liable for damages caused by its failure to give timely notice.

██ In *Reynolds–Wilson Lumber Co.,* 699 P.2d at 146, this Court held that section 4–302 imposed strict liability on the payor bank for failure to either return an item or give notice of its dishonor before its midnight deadline. This holding was based on Section 4–302 making the payor bank "accountable" for an item when the bank fails to comply with the notice requirements. Sections 4–103(e) and 4–214(a) and (c) only hold the bank liable for damages rather than making it "accountable" for the item. Thus, if a bank fails to give timely notice of dishonor to a depositor, it is liable for the amount of damages caused by its failure and not strictly liable for the amount of the instrument.

## VIII. CONCLUSION

The judgment of the trial court is reversed. The Court of Appeals' opinion is vacated. The case is remanded to the trial court for evidentiary proceedings consistent with this opinion.

CERTIORARI PREVIOUSLY GRANTED; COURT OF APPEALS' OPINION VACATED; JUDGMENT OF TRIAL COURT REVERSED; CAUSE REMANDED.

WILSON, C.J., KAUGER, V.C.J., and HODGES, LAVENDER, HARGRAVE and SUMMERS, JJ., concur.

SIMMS, OPALA and WATT, JJ., dissent.

SIMMS, Justice, dissenting:

Summary judgment in favor of defendant Liberty Bank was properly rendered by the trial court and affirmed by the Court of Appeals. The bank was not attempting to recover for the dishonored check, but under the depository agreement and it is entitled to judgment. There is no showing of any legal infirmity in the depository agreement. I would deny certiorari.

I am authorized to state that Justice OPALA and Justice WATT join with me in the views expressed herein.