40832.  PAZOL v. CITIZENS NATIONAL BANK OF
SANDY SPRINGS.

Decided September 23, 1964.

320

*Parker & Parker, Richard L. Parker, Melvin Pazol,* for plaintiff in error.

*Alston, Miller & Gaines, Daniel B. Hodgson, Hewitt H. Covington,* contra.

FELTON, Chief Judge. ■ Prior to the enactment of the Uniform Commercial Code (Ga. L. 1962, p. 156 et seq.; *Code Title* 109A), the law in this State with regard to the present situation was expressed in *Pike v. First Nat. Bank of Rome,* 99 Ga. App. 598 (1) (109 SE2d 620), as follows: "The deposit by a customer in a bank of a check to the credit of the depositor gives rise to the presumption, as between the parties, that the bank is the collecting agency of the depositor. And even though there is an express agreement to that effect, where, however, it is the custom of the bank to credit such deposits to the account of the customer and to permit him to draw against it, and where the depositor does in fact draw out substantially the entire proceeds of the checks before collection thereof by the bank and before any notice of any infirmity in such checks, the bank by such action gives value and becomes a holder in due course of the instruments sued on, with the privilege of collecting the proceeds of the checks in its own name in an action against the drawer thereof, and without being subject to any defenses which might have been urged against the original payee." To the same effect, see *Home Finance Co. v. Bank of LaFayette,* 99 Ga. App. 873 (1) (110 SE2d 57), reversed on other grounds, *Home Finance Co. v. Bank of LaFayette,* 215 Ga. 533 (111 SE2d 359) and *Bank of LaFayette v. Home Finance Co.,* 215 Ga. 535 (111 SE2d 361), made the judgment of the Court of Appeals in *Home Finance Co. v. Bank of LaFayette,* 100 Ga. App. 744 (112 SE2d 624).

An examination of the provisions of the U. C. C. (*Code Title* 109A) and a comparison of it with the law prior to its passage

reveal that the adoption of the U. C. C. has not changed the result under the present alleged factual situation. The plaintiff bank is at least a holder, as defined by *Code Ann.* § 109A-1-201 (20), i.e., "a person who is in possession of a document of title or an instrument or an investment security drawn, *issued or indorsed* to him or to his order or to bearer or in blank." (Emphasis supplied.) The petition alleges that the payee delivered the check to the plaintiff and "caused the same to be endorsed for deposit." Even if this is construed to mean that the payee did not personally indorse the instrument, as indeed the copy of the check attached as an exhibit shows to be the case, it was issued to the plaintiff. *Code Ann.* § 109A-3-202 (2) provides that "[a]n indorsement must be written by *or on behalf of* the holder," which holder may be the payee under *Code Ann.* § 109A-3-302 (2). *Code Ann.* § 109A-4-205 (1) provides as follows: "A depositary bank which has taken an item for collection may supply any indorsement of the customer which is necessary to title unless the item contains the words 'payee's indorsement required' or the like. In the absence of such a requirement a statement placed on the item by the depositary bank to the effect that the item was deposited by a customer or credited to his account is effective as the customer's indorsement." The comment of the National Conference of Commissioners on Uniform State Laws and the American Law Institute pertaining to this particular section explains that this subsection "is designed to speed up collections by eliminating any necessity to return to a *non-bank depositor* any items he may have failed to indorse." (Emphasis supplied.) 1962 Official Text of the Uniform Commercial Code, p. 389. The phrase "non-bank depositor" means a depositor which is not a bank, rather than one depositing in something other than a bank, as is contended by the plaintiff in error. Under the provisions of *Code Ann.* § 109A-3-301, "[t]he holder of an instrument whether or not he is the owner may transfer or negotiate it and, except as otherwise provided in 109A-3-603 on payment or satisfaction, discharge it or *enforce payment in his own name.*" (Emphasis supplied.) There being no provisions in *Code Ann.* § 109A-3-603 which apply to the case sub judice, the plaintiff, being a holder of the check, could, under the above

Code sections, enforce payment in its own name against the drawer.

Furthermore, under the allegations of the petition, the plaintiff was a holder in due course as defined by *Code Ann.* § 109A-3-302 (1), which requires that the holder take the instrument "(a) for value; and (b) in good faith; and (c) without notice that it is overdue or has been dishonored or of any defense against or claim to it on the part of any person." Regarding requirement (a), *Code* § 109A-4-209 provides as follows: "For purposes of determining its status as a holder in due course, the bank has given value *to the extent that it has a security interest in an item* provided that the bank otherwise complies with the requirements of 109A-3-302 on what constitutes a holder in due course." (Emphasis supplied.) *Code Ann.* § 109A-4-208 (1) provides that "[a] bank has a security interest in an item . . . (a) in case of an item deposited in an account to the extent to which credit given for the item has been withdrawn or applied." *Code Ann.* § 109A-3-303 also provides that a holder takes an instrument for value to the extent that he acquires a security interest in the instrument. *Code Ann.* § 109A-3-205 defines a restrictive indorsement as one which "(c) includes the words 'for collection,' 'for deposit,' 'pay any bank,' or *like terms signifying a purpose of deposit or collection."* (Emphasis supplied.) *Code Ann.* § 109A-3-206 (3) provides that the transferee of an instrument with such an indorsement ". . . must pay or apply any value given by him for or on the security of the instrument consistently with the indorsement and to the extent that he does so he becomes a *holder for value.* In addition such transferee is a *holder in due course* if he otherwise complies with the requirements of 109A-3-302 on what constitutes a holder in due course." (Emphasis supplied.) By causing the check to be indorsed "for deposit," as alleged, the payee signified its purpose of deposit and the plaintiff bank, by applying the value given consistently with this indorsement by crediting the payee-depositor's account with the amount of the check, became a holder for value.

Regarding requirement (b) of a holder in due course (*Code Ann.* § 109A-3-302 (1)), there is nothing on the face of the petition to indicate a lack of good faith on the part of the plaintiff

in accepting the check. Good faith is presumed until questioned by appropriate pleadings.

The liability of the drawer to pay the amount of his dishonored check is established by *Code Ann.* § 109A-3-413 (2): "The drawer engages that upon dishonor of the draft and any necessary notice of dishonor or protest he will pay the amount of the draft to the holder or to any indorser who takes it up. . . ." Under *Code Ann.* § 109A-3-511 (2), notice or protest is entirely excused when "(b) such party has himself dishonored the instrument or has countermanded payment or otherwise has no reason to expect or right to require that the instrument be accepted or paid."

Plaintiff in error contends that *Code Ann.* § 109A-4-201 (1) (Ga. L. 1962, pp. 156, 289) designates the plaintiff bank as an agent of the payee under the alleged circumstances and that it cannot maintain a cause of action against the defendant-drawer in any capacity except as agent for its depositor-payee. This subsection of the Code provides as follows: "Unless a contrary intent clearly appears and prior to the time that a settlement given by a collecting bank for an item is or becomes final (subsection (3) of 109A-4-211 and 109A-4-212 and 109A-4-213) the bank is an agent or subagent of the owner of the item and any settlement given for the item is provisional. This provision applies regardless of the form of indorsement or lack of indorsement and even though credit given for the item is subject to immediate withdrawal as of right or is in fact withdrawn; but the continuance of ownership of an item by its owner and any rights of the owner to proceeds of the item are subject to rights of a collecting bank such as those resulting from outstanding advances on the item and valid rights of set-off. When an item is handled by banks for purposes of presentment, payment and collection, the relevant provisions of this Article apply even though action of parties clearly establishes that a particular bank has purchased the item and is the owner of it."

The fact that the presumption of the plaintiff-depositary bank's agency of the payee-depositor for collection purposes continued even after the credit given the depositor had been withdrawn, as provided in the above Code section, does not negative the right

of the bank to bring an action in its own name against the defendant-drawer. As indicated hereinabove, a holder may enforce payment of an instrument in its own name whether or not it is an owner of it. *Code Ann.* § 109A-3-301. The primary purpose of *Code Ann.* § 109A-4-201 seems to be to avoid litigation over the question of the status of collecting banks, i.e., as owners or agents for collection, and to make any settlements given by them to the owner of instruments provisional until they have received final settlement for the instruments. By making the settlement provisional, this provision causes the risk of loss to continue in the owner of the item rather than in the agent bank. As pointed out in the comment of the 1962 Official Text of the U.C.C., pp. 381, 382, this agency status is consistent with rights of chargeback (*Code Ann.* § 109A-4-212) and risk of loss in the event of insolvency (*Code Ann.* § 109A-4-214). The net result in the present case is that the plaintiff bank continued to be the payee-depositor's agent for collection even after the credit was withdrawn and, had the plaintiff bank been able to obtain a final settlement for the check, the settlement made with the depositor would have become final and the agency status terminated; however, since the plaintiff bank was unable to obtain a settlement, either final or provisional, from the payor bank by reason of the stop payment order of the defendant-drawer, the plaintiff bank became a holder in due course (all the requirements of *Code Ann.* § 109A-3-302 having been met) with a security interest in the item which enabled it to enforce payment against the drawer, with the right of charge-back (*Code Ann.* § 109A-4-212) against its depositor's account in the event that a judgment cannot be obtained against the drawer.

■ Regarding requirement (c) of a holder in due course, the fact that the copy of the check attached as an exhibit to the petition bears a date more than one year prior to the time the instrument was alleged to have been transferred to the plaintiff bank does not subject the petition to a general demurrer on the ground that the petition shows that the bank had notice that the check was overdue. While it is true that "[w]here the instrument or any signature thereon is dated, the date is presumed to be correct," *Code Ann.* § 109A-3-114 (3) (Ga. L. 1962, pp. 156, 244),

this presumption is not conclusive, and may be overcome by parol evidence that it was in fact made on another date, *Mutual Fertilizer Co. v. Henderson,* 18 Ga. App. 495 (1) (89 SE 602), this evidence not being inadmissible as seeking to vary the contents of the instrument. *Waynesboro Planing Mill v. Perkins Mfg. Co.,* 35 Ga. App. 767 (5) (134 SE 831); *Wiggins v. First Mutual Bldg. & Loan Assn.,* 179 Ga. 618 (176 SE 636). It is alleged that the plaintiff gave credit for the check prior to receiving any knowledge or notice of its having been dishonored and without notice of any defense against or claim to it on the part of any person. This allegation is sufficient as against a general demurrer to allege compliance with requirement (c) of a holder in due course. The petition therefore alleges the plaintiff to be a holder in due course, with the rights incident thereto as set out in *Code Ann.* § 109A-3-305.

The court did not err in its judgment overruling the general demurrer to the petition.

*Judgment affirmed. Frankum and Pannell, JJ., concur.*