59111, 59258. FIRST BANK & TRUST COMPANY v.
SKELTON et al. (two cases).

McMurray, Presiding Judge.

During the month of January, 1977, H. Gray Skelton, Jr., a self-employed attorney at law, was employed by Charles Smithson to assist him in consummating a loan assumption whereby he was to purchase property from Donald Robert Kimball. Said property was subject to a loan in favor of Atlanta Federal Savings & Loan Association. Smithson obtained another loan from First Bank & Trust Company to purchase the property. Harry O. Hames, Jr., an officer of the bank, contacted Skelton who then prepared the documents. On January 5, 1977, the transaction was closed in escrow with all the papers being signed pending only the finalization of the loan transaction by Smithson with the First Bank & Trust Company. A warranty deed was executed by Kimball to Smithson at that time, conveying the property to Smithson. On January 7, 1977, Skelton presented the bank with his preliminary certificate of title, a deed to secure debt, and an owner's affidavit. Smithson executed the loan documents with the bank, and the bank officer issued to Smithson a check in the amount of $5,900 as the loan proceeds although the check was not drawn on that bank but upon the Trust Company Bank, Atlanta, Georgia. Smithson endorsed the check and gave it to Skelton as well as some other money needed to consummate the transfer and loan assumption as to the real estate. Skelton then deposited the draft and the additional funds to his real estate trust account or "escrow account." He then prepared a check in the amount of $5,698.23 payable to the seller, Donald Robert Kimball, which was dated January 6, 1977, and delivered the check to Kimball's attorney at law. On the following Monday, in preparation for recording the warranty deed, Skelton received a telephone call from Harry O. Hames, Jr., the bank officer, who told him that he had stopped payment on the loan proceeds draft, contending he had "received information that Smithson was not Smithson." The check on which the stop payment had issued was finally returned to Skelton. Skelton's check was likewise returned to Kimball, marked "not sufficient funds."

Thereafter an effort was made to close the transaction with Smithson obtaining other funds, but being unable to do so, the real estate transaction was never accomplished. The warranty deed was never recorded after Skelton was notified that the bank had stopped payment on the check issued to Smithson.

Whereupon Kimball sued Skelton for $5,698.23, contending that he was indebted to the plaintiff in the amount of the check

which had been dishonored on presentment. Skelton answered, admitting jurisdiction and that he was the designated payee on the check in question but otherwise denied the claim. He also filed a third-party complaint against First Bank & Trust Company, setting forth the facts of the case, contending there was an unwarranted stop payment order on the third-party defendant's check which was dishonored, causing his check to be dishonored. He prayed for judgment against the third-party defendant for any sums that might be recovered against him in favor of the plaintiff. The third-party defendant answered, setting up numerous defenses contending it was perfectly warranted in placing a stop payment order on the check issued in this transaction. Skelton also, individually and as escrowee for Charles Smithson, sued First Bank & Trust Company on the dishonored check in the amount of $5,900, contending he was a bona fide holder in due course. The bank answered this suit generally with the same defenses, contending it was not liable and that the defendant was not a holder in due course.

Kimball's case proceeded to trial before a jury in which the material facts shown above are not controverted although there is some conflict in the evidence with reference to the transactions here involved and the amount of damages. By stipulation and agreement of all concerned, the decision in the first case was to be dispositive of all issues raised in the action between Skelton and the First Bank & Trust Company.

At the completion of all the evidence, counsel for the plaintiff Kimball moved for a directed verdict. The trial court instructed the jury that it was granting the motion and directing a verdict in favor of the plaintiff against the defendant Skelton in the sum of $5,698.23. The court also further directed a verdict in favor of defendant Skelton in the third-party action over against the First Bank & Trust Company in the sum of $5,698.23. The verdict was entered accordingly, and the trial court issued its order upon the motion for directed verdict by plaintiff and by the third-party plaintiff holding as a matter of law that the plaintiff Kimball was a holder in due course of the check dated January 6, 1977, drawn on the trust account of H. Gray Skelton, "there having been no evidence presented such as would subject a holder in due course to any defenses on the instrument." The court held, as a matter of law, that Skelton was a holder in due course of the loan proceeds check given by the third-party defendant First Bank & Trust Company to Charles Smithson, endorsed by Charles Smithson to Skelton, again holding that there was "no evidence . . . as would subject Third-Party Plaintiff [Skelton] to any defenses as against a holder

in due course." By stipulation and agreement the decision in this matter disposed of all issues raised in the companion case. The third-party defendant (and defendant in the companion case) separately appeals as to each case. *Held:*

The main issue here as disclosed by the various enumerations of error with reference to the direction of the verdict and judgment based thereon is whether the defendant Skelton (also third-party plaintiff and plaintiff in the second suit) as well as Kimball were bona fide holders in due course of the two checks here involved. A holder in due course is one who takes the instrument for value and in good faith and without notice that it is overdue or has been dishonored or of any defense against or claim to it on the part of any person. See Code Ann. § 109A-3—302 (Ga. L. 1962, pp. 156, 252); *Kemp Motor Sales, Inc. v. Statham,* 120 Ga. App. 515 (1) (171 SE2d 389). Absolutely no evidence has been produced showing any lack of good faith on the part of the plaintiff in accepting Skelton's check or on the part of Skelton in accepting the check from the purchaser which was the check issued by the defendant bank. In fact, good faith is presumed until questioned. See Code Ann. § 109A-3—413 (Ga. L. 1962, pp. 156, 261); *Pazol v. Citizens Nat. Bank,* 110 Ga. App. 319, 323 (138 SE2d 442).

Whereas here, on a trial of an action upon such checks against the makers thereof who had stopped payment (although Skelton's check was returned for insufficient funds), the evidence demands a finding that the checks as drawn were negotiated as payment for transactions owed by the payees "in good faith, without notice of the maker's defense of failure of consideration, [and] a finding was demanded that the . . . holder was a holder in due course and entitled to recover the full amount of the check." *Kemp Motor Sales, Inc. v. Statham,* 120 Ga. App. 515 (2), supra.

*Judgment affirmed. Smith and Banke, JJ., concur.*

SUBMITTED JANUARY 15, 1980 — DECIDED APRIL 8, 1980 — REHEARING DENIED APRIL 29, 1980 —

*John H. Moore, Joseph C. Parker,* for appellant.
*George W. Carreker, Thomas J. Hough, Jr.,* for appellants.