748 A.2d 111

COMMERCE BANK, N.A., PLAINTIFF–RESPONDENT, v. BRUCE RICKETT, INDIVIDUALLY AND T/A RICK'S AUTO SALES, DEFENDANT, AND DESIMONE AUTO, INC., T/A EXECUTIVE AUTO SALES, J/S/A, DEFENDANT–APPELLANT.

Superior Court of New Jersey
Appellate Division

Argued March 7, 2000—Decided March 31, 2000.

Before Judges SKILLMAN, NEWMAN and FALL.

*Rex J. Roldan,* argued the cause for appellant *(Albertson Ward,* attorneys; *Mr. Roldan,* on the brief).

*Richard M. Berman,* argued the cause for respondent *(Parker, McCay & Criscuolo,* attorneys; *Mr. Berman,* on the brief).

The opinion of the court was delivered by

NEWMAN, J.A.D.

This appeal questions whether a bank can be a holder in due course when it makes payment on a check, dated a year before it was presented, which, in fact, was presented within ninety days after the date of its actual issuance. We hold that, pursuant to *N.J.S.A.* 12A:3–304a(2), a check becomes "overdue" ninety days after the date it is actually issued and, thus, the bank retains its holder in due course status.

The facts, which are not in dispute, may be summarized as follows. On January 5, 1998, defendant, Bruce Rickett, individually and trading as Rick's Auto Sales, presented a check to Commerce Bank, N.A. (the Bank), issued to him on January 3, 1998 by DeSimone Auto, Inc., t/a Executive Auto Sales (DeSimone), in the amount of $12,000, for deposit into Rickett's checking account with the Bank. The Bank credited Rickett's account and shortly thereafter allowed him to draw against same.

The check, dated January 3, 1997, was drawn upon DeSimone's account at the Bank of Gloucester County for payment of a 1997 Buick LeSabre motor vehicle. The understanding between Rickett and DeSimone was that the check would not be presented for payment if the motor vehicle was damaged. Shortly after issuance of the check, DeSimone inspected the vehicle and found frame damage. DeSimone telephoned Rickett, advising him to pick up the vehicle and return the check. DeSimone returned the vehicle to Rickett, who accepted it. Thereafter, DeSimone issued a "stop payment" on the check, although the record does not

reveal when the "stop payment" was requested. Contrary to their agreement, Rickett had already presented the check for payment on January 5, 1998, and drawn against it. The check was returned by the Bank of Gloucester County to the Bank as unpaid on January 13, 1998. The amount charged back to Rickett's account by the Bank was $11,016.48.

The Bank filed a complaint against both Rickett and DeSimone, seeking the amount charged back to Rickett's account. Rickett could not be located by the Bank. As to DeSimone, the Bank asserted that it was a "holder in due course" and, therefore, entitled to payment from DeSimone. DeSimone contended that the erroneous date of "January 3, 1997" placed the Bank on notice that the check may be overdue, and, accordingly, the Bank cannot be a holder in due course because "holder-in-due-course" status attaches at the time the transaction is made.

In support of its motion for summary judgment, the Bank submitted the certification of its assistant vice president, which states, in relevant part:

> I have been employed by Commerce Bank, N.A. for approximately 17 years and have 11 years of branch experience. It has been my experience that checks presented for negotiation are often misdated in the first few days of a new year with the prior year still being written on the check.

In granting summary judgment in favor of the Bank in the amount of $11,016.48, Judge Supnick found that the Bank was a holder in due course, largely relying on the fact that DeSimone had admitted that the check was actually issued on January 3, 1998, not January 3, 1997, and on the Bank's proof that "checks presented for negotiation are often misdated in the first few days of a new year with the prior year still being written on the check." DeSimone moved for reconsideration. Judge Supnick denied the motion.

On appeal, DeSimone contends that the application of *N.J.S.A.* 12A:3-302a(2) negates the Bank's status as a holder in due course. That section reads as follows:

a. Subject to subsection c. of this section and subsection d. of 12A:3–106, "holder in due course" means the holder of an instrument if:

. . . .

(2) the holder took the instrument for value, in good faith, *without notice that the instrument is overdue* or has been dishonored or that there is an uncured default with respect to payment of another instrument issued as part of the same series, without notice that the instrument contains an unauthorized signature or has been altered, without notice of any claim to the instrument described in 12A:3–306, and without notice that any party has a defense or claim in recoupment described in subsection a. of 12A:3–305.

[*N.J.S.A.* 12A:3–302a(2)(emphasis added).]

DeSimone asserts that the "January 3, 1997" date on the face of the check made it "overdue." *N.J.S.A.* 12A:3–304 provides, in relevant part:

a. An instrument payable on demand becomes overdue at the earliest of the following times:

. . . .

(2) *if the instrument is a check, 90 days after its date* [.]

[ (Emphasis added).]

DeSimone also cites to *N.J.S.A.* 12A:3–113, which provides, in pertinent part:

a. An instrument may be antedated or postdated. The date stated determines the time of payment if the instrument is payable at a fixed period after date.

DeSimone reasons that, because the check was dated January 3, 1997, and deposited in early January 1998, the Bank had actual notice that the check was overdue, as defined by the ninety-day period for checks set forth in *N.J.S.A.* 12A:3–304a(2), and was therefore not a holder in due course under *N.J.S.A.* 12A–3:302a(2). DeSimone also construes *N.J.S.A.* 12A:3–113a to mean that the fact that the check was dated January 3, 1997, establishes the check's "date" as January 3, 1997, automatically rendering the check overdue when it was deposited on January 5, 1998.

DeSimone's reliance on *N.J.S.A.* 12A:3–113a to support its argument that January 3, 1997 must be viewed as the check's "date" for purposes of determining whether the instrument was overdue under *N.J.S.A.* 12A:3–304a(2) is misplaced. *N.J.S.A.* 12A:3–113a refers to an instrument payable at a fixed period of time. A check does not fit within that definition, but rather is a

demand instrument. *N.J.S.A.* 12A:3--104f; *Santos v. First Nat'l State Bank of N.J.*, 186 *N.J.Super.* 52, 74, 451 *A.*2d 401 (App.Div. 1982). Accordingly, *N.J.S.A.* 12A:3–113a is inapplicable. *Compare N.J.S.A.* 12A:3–108a *with N.J.S.A.* 12A:3--108b.

■ The issue presented is whether, pursuant to *N.J.S.A.* 12A:3–304a(2), a check becomes overdue ninety days after the date on the face of the check or ninety days after its date of issue. We construe *N.J.S.A.* 12A:3–304a(2) to mean that a check becomes overdue ninety days after the date it is actually issued. To interpret *N.J.S.A.* 12A:3--304a(2) otherwise is impractical and inconsistent with other provisions in the Code. *See* 2 James J. White & Robert S. Summers, *Uniform Commercial Code* § 17–7 at 174 (4th ed.1995) (stating that the 1995 revision of *U.C.C.* § 3–304(a)(2) means that "a party can now take a check up to 90 days after its *issue* ") (emphasis added).

*Pazol v. Citizens Nat'l Bank of Sandy Springs*, 110 *Ga.App.* 319, 138 *S.E.*2d 442 (1964), is factually similar. There, a check that bore the date "January 4, 1963" was deposited on or about January 9, 1964. *Id.* at 444. The drawer entered a stop payment order, but the payee-depositor was permitted to withdraw its full value before the depositary bank received notice that the check had been dishonored. *Ibid.* The payor bank refused to transfer funds, and the depository bank sued the drawer for the value of the check. *Ibid.* The drawer sought a general demurrer on the ground that the depository bank had actual notice that the check was overdue based on the date on the face of the instrument and that it could not claim to be a holder in due course. *Id.* at 447. The court rejected this argument, ruling that, although the date on an instrument is presumed to be correct, "this presumption is not conclusive, and may be overcome by parol evidence that it was in fact made on another date[.]" *Ibid.*

The reasoning of the *Pazol* court is persuasive. Here, the Bank has established that the date on the face of the check was incorrect by DeSimone's admission that the check was actually issued on January 3, 1998. Accordingly, the Bank was a holder in

due course, as DeSimone only challenges that status on the ground that the Bank had notice that the check was overdue.

The court in *Pazol* relied in part on *U.C.C.* § 3–114(3) (former *N.J.S.A.* 12A:3–114(3)) which provided that, "[w]here the instrument or any signature thereon is dated the date is *presumed* to be correct." *Pazol, supra,* 138 *S.E.*2d at 447 (emphasis added). In our State, this section was repealed (*L.* 1995, *c.* 28, § 1), and replaced by *N.J.S.A.* 12A:3–113, which does not contain any language as to whether the date on the face of an instrument is presumptively or conclusively correct.

Courts in other jurisdictions have allowed parol evidence to prove or disprove a party's status as a holder in due course. *See Johnson v. Primerica Life Ins. Co.,* 34 *F.Supp.*2d 562, 567 (W.D.Mich.1998)("[E]vidence outside the transaction is admissible to show the party's status as a holder in due course."); *First Int'l Bank of Israel, Ltd. v. L. Blankstein & Son, Inc.,* 59 *N.Y.*2d 436, 465 *N.Y.S.*2d 888, 452 *N.E.*2d 1216, 1221 (1983)(holding that parol evidence is "clearly admissible" to establish that a party who took an instrument that was clear on its face did not take the instrument for value, in good faith, or without notice).

The Bank has offered incontrovertible evidence, namely DeSimone's very admission, that the check was not in fact overdue at the time it was deposited. DeSimone is correct that the Bank did not conclusively learn that the check was really made in 1998 until months after deposit. Had the check actually been made out in 1997, there is little question that the Bank would have had notice that the check was overdue and would not be able to lay claim to holder in due course status. To that extent, the Bank was taking a calculated risk.

Here, however, the check was not overdue. It is impossible for the Bank to have had notice of a circumstance which simply did not exist. While DeSimone was the victim of Rickett's breach, there is no doubt that, had the check been correctly dated, DeSimone would be liable for payment on it. To adopt DeSimone's reasoning would create a perverse incentive for drawers to

intentionally misdate checks with knowledge that recourse could be sought in the courts should the transaction break down.

Moreover, the goal of the overdue provision is to prevent drawers from being indefinitely liable for payment on checks, not to prevent the type of fraud or breach of contract of which DeSimone was apparently the victim.

DeSimone's claim that equities weigh in its favor is unavailing. DeSimone was improvident in issuing an otherwise facially valid check for the full price of an uninspected vehicle, and the Bank should not bear the loss merely because DeSimone was also careless in filling out the instrument. Because it is admitted that the check was actually issued on January 3, 1998, the Bank was a holder in due course.

Affirmed.