
IN CLERKS OFFICE
SUPREME COURT, STATE OF WASHINGTON
DATE NOV 0 3 2016

Madsen, C.J.
CHIEF JUSTICE

This opinion was filed for record
at 8:00 am on Nov 3, 2016

SUSAN L. CARLSON
SUPREME COURT CLERK

# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | |
|---|---|
| CERTIFICATION FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF WASHINGTON IN<br><br>TRAVELERS CASUALTY & SURETY CO.,<br>As Assignee and Subrogee of Skils'Kin,<br><br>         Plaintiff,<br><br>v.<br><br>WASHINGTON TRUST BANK,<br><br>         Defendant. | No. 92483-0<br><br>En Banc<br><br>Filed   NOV 0 3 2016 |

GONZÁLEZ, J.—An employee of a nonprofit serving disabled adult clients

used her position to embezzle more than half a million dollars held by the

nonprofit for its clients. She did this by drawing checks from the nonprofit's

account payable to its clients, signing the back of those checks with her own

signature, and cashing them at the nonprofit's local bank. After the embezzlement

was discovered, Travelers Casualty & Surety Company, the nonprofit's insurance

company, made the nonprofit whole. Travelers now seeks contribution from the bank in federal court. By submitting certified questions, that court has asked us to decide, among other things, whether a nonpayee's signature on the back of a check is an indorsement. We are also asked whether claims based on unauthorized indorsements that are not discovered and reported to a bank within one year of being made available to the customer are time barred. We answer yes to both questions.

FACTS & PROCEDURAL HISTORY

Travelers insured Skils'Kin, a nonprofit agency providing services to disabled adult clients in Spokane. Skils'Kin was the representative payee for many of its clients' Social Security benefits, which were deposited into a single business checking account at Washington Trust Bank (Bank). Skils'Kin wrote checks as representative payee and agent for its clients' use. Checks were written either to the clients directly or to those who provided services to the clients. Clients and Skils'Kin entered into a "'Financial Service Agreement'" in which clients "'authorize SKILS KIN staff to act as agent/payee on [their] behalf.'" Doc. No. 191-1, at 2. Skils'Kin managed the monthly income and living expenses for about 1,000 clients. Shannon Patterson was a Skils'Kin employee who oversaw Skils'Kin's bank account and was a signatory on the account. Skils'Kin adopted

2

and delivered a corporate resolution to the Bank, authorizing Patterson to open deposit and checking accounts and to indorse checks.[1]

From 2008 to 2013, Patterson embezzled hundreds of thousands of dollars from Skils'Kin by drawing over 300 checks from Skils'Kin's account payable to its disabled clients or to third party service providers, signing the back of each check with her own name, cashing the checks at the Bank, and keeping the money. Patterson was not the named payee on any of the checks at issue, and no named payee indorsed the checks to Patterson. Patterson's bad acts were not discovered until she admitted them in a suicide note.

The Bank sent Skils'Kin monthly bank statements during Patterson's embezzlements. These statements included copies of the fronts of the checks that had been cashed at the Bank. The statements did not include copies of the backs of the checks, which would have readily revealed Patterson's signature. Each

---

[1] *See* Doc. No. 90-3. In relevant part, Skils'Kin's 2009 corporate resolution states:
> (4) Any of the persons named below, so long as they act in a representative capacity as agents of this corporation, are authorized to make any and all other contracts, agreements, stipulations and orders which they may deem advisable for the effective exercise of the powers indicated below, from time to time with this Financial Institution, concerning funds deposited in this Financial Institution, moneys borrowed from this Financial Institution or any other business transacted by and between this corporation and this Financial Institution subject to any restrictions stated below.

*Id.*
The resolution also gave each of the named individuals the power to:
> (2) Open any deposit or checking account(s) in the name of this corporation.
> . . . (3) Endorse checks and orders for the payment of money and withdraw funds on deposit with this Financial Institution.

*Id.*

statement contained contact information for the bank and listed cleared checks by check number, date, and dollar amount. Skils'Kin's bookkeeper used these statements to reconcile the accounts. Beginning in 2011, Skils'Kin could access its checking account online at any time to view both the front and backs of checks that cleared its account. The online process required clicking an account to view, clicking a link for the front of the check, clicking a link for the back of the check, closing the check, and repeating as necessary.

After Patterson's confession, Travelers covered Skils'Kin's losses and sued the Bank for contribution. Travelers alleges that the Bank breached its duty of care as a matter of law by cashing checks to Patterson—who was not the named payee—and that the checks at issue are not "properly payable" under RCW 62A.4-401(a).[2] Thus, it reasons, the time bar under RCW 62A.4-406(f)[3] does not apply.

---

[2] A bank may charge against the account of a customer an item that is properly payable from that account even though the charge creates an overdraft. An item is properly payable if it is authorized by the customer and is in accordance with any agreement between the customer and bank.
RCW 62A.4-401(a).

[3] Without regard to care or lack of care of either the customer or the bank, a natural person whose account is primarily for personal, family, or household purposes who does not within one year, and any other customer who does not within sixty days, from the time the statement and items are made available to the customer (subsection (a)) discover and report the customer's unauthorized signature or any alteration on the face or back of the item or does not within one year from that time discover and report any unauthorized indorsement is precluded from asserting against the bank such unauthorized signature or indorsement or such alteration. If there is a preclusion under this subsection, the payor bank may not recover for breach of warranty under RCW 62A.4-208 with respect to the unauthorized signature or alteration to which the preclusion applies.
RCW 62A.4-406(f).

4

Washington Trust Bank argues that an oral agreement between the Bank and Patterson allowed tellers to cash the checks signed on the back by Patterson. The parties dispute whether an oral agreement existed. The Bank also contends the "Terms and Conditions" contract for Skils'Kin's pooled account at Washington Trust Bank gave Patterson authority to indorse checks on behalf of the named payees.[4] Additionally, the Bank argues that Skils'Kin's corporate resolution allowed Patterson to make an agreement with the Bank and that Skils'Kin clients were unable to personally sign the checks at the bank because they were homebound, disruptive, and/or lacked proper identification. As an affirmative defense, the Bank contends RCW 62A.4-406(f) precludes Travelers's claims as time barred, while Travelers denies that Patterson's signature qualifies under RCW 62A.4-406(f) and argues the statute does not apply.

Both the bank and the insurance company filed for summary judgment. Neither prevailed. Sometime afterward, the district court found that the case raised unresolved questions of Washington state law and certified three questions to us, as follows:

---

[4] The "Terms and Conditions" state, in part:
> Unless clearly indicated otherwise on the account records, any of you, acting alone, who signs in the space designated for signatures on the signature card may withdraw or transfer all of any part of the account balance at any time. Each of you (until we receive written notice to the contrary) authorizes each other person signing the signature card to indorse any item payable to you or your order for deposit to this account or any other transaction with us.

Doc. No. 90-1, at 24, 29, 31.

CERTIFIED QUESTIONS

1. When a check (i) is presented for payment, (ii) bears no signature in the name of the payee on the back, and (iii) the drawee/payor bank pays the check over the counter, in cash, to an individual who is not the payee but who is an authorized signer on the account and who signs the back of the check in her own name, is the signature on the back of the check an "unauthorized signature," "alteration," or "unauthorized indorsement" as a matter of law imposing on the customer the notice requirement of RCW 62A.4-406(f)?
2. If the Answer to Question #1 is "Yes," does providing a bank customer with a listing of the front of the checks and electronic access to images of the front and back of the checks via on-line banking make the "statement of account" and "items" reasonably available as required by 4-406(a)?
3. Does a bank fail to exercise ordinary care as a matter of law if it pays a check to a person other than the payee when the check contains no indorsement in the name of the payee?

Order Certifying Local Law Questions to the Wash. Supreme Ct., *Travelers Cas. & Sur. Co. v. Wash. Tr. Bank*, No. CV-13-0409-JLQ, at 9-10 (E.D. Wash. Nov. 10, 2015).

STANDARD OF REVIEW

Certified questions present questions of law, and this court reviews them de novo. *Parents Involved in Cmty. Schs. v. Seattle Sch. Dist. No. 1*, 149 Wn.2d 660, 670, 72 P.3d 151 (2003) (citing *Rivett v. City of Tacoma*, 123 Wn.2d 573, 578, 870 P.2d 299 (1994)). We consider the legal issues not in the abstract but based on the certified record provided by the federal court. *Bradburn v. N. Cent. Reg'l Library Dist.*, 168 Wn.2d 789, 799, 231 P.3d 166 (2010) (citing RCW 2.60.030(2)).

We review questions of statutory interpretation de novo. *State v. Wentz*, 149 Wn.2d 342, 346, 68 P.3d 282 (2003) (citing *City of Pasco v. Pub. Emp't Relations Comm'n*, 119 Wn.2d 504, 507, 833 P.2d 381 (1992)). On matters of statutory interpretation, our "fundamental objective is to ascertain and carry out the Legislature's intent." *Dep't of Ecology v. Campbell & Gwinn, LLC*, 146 Wn.2d 1, 9, 43 P.3d 4 (2002). "[I]f the statute's meaning is plain on its face, then the court must give effect to that plain meaning as an expression of legislative intent." *Id.* at 9-10. A statute's "meaning is discerned from all that the Legislature has said in the statute and related statutes which disclose legislative intent about the provision in question." *Id.* at 11.

## ANALYSIS

We decline to answer the first certified question as written because part of the original question asks us to make factual determinations regarding Patterson's authority to cash the checks. Instead, we exercise our inherent authority to reformulate question 1 into two questions of law. *See Danny v. Laidlaw Transit Servs, Inc.*, 165 Wn.2d 200, 205 n.1, 193 P.3d 128 (2008) (plurality opinion) (citing *Broad v. Mannesmann Anlagenbau AG*, 196 F.3d 1075, 1076 (9th Cir. 1999)). First, is the signature of someone other than the named payee an

indorsement if that signature is located on the back of a check[5] that is presented for payment, lacks the payee's signature on the back, and is cashed by a bank? Second, are Travelers's claims time barred under RCW 62A.4-406(f)? We answer both in the affirmative. We conclude that Patterson's signature is an indorsement as a matter of law. RCW 62A.3-204(a). But whether Patterson's signature is "unauthorized" for purposes of the latter half of the first question will depend on whether Patterson had the authority to cash checks as an agent for Skils'Kin's customers. We recognize that whether Patterson had that authority is disputed and decline to reach that issue.

Certified question 2 essentially asks us to decide whether the time bar provision of RCW 62A.4-406(f) has been triggered. To enjoy the benefit of RCW 62A.4-406(f)'s time bar on claims, a bank must make a statement of account available to its customer that meets certain statutory requirements. We find as a matter of law that the Bank's statement of account met those requirements and answer this question in the affirmative.

Finally, in this case, we answer certified question 3 in the negative. Generally, a bank fails to exercise ordinary care as a matter of law if it cashes a check for a person other than the payee when the check contains no payee's

---

[5] A check is one type of negotiable instrument. A "check" is a draft, or order, that is payable on demand and drawn on a bank. RCW 62A.3-104(f).

indorsement. However, whether in fact the bank exercised ordinary care will turn on unresolved factual issues regarding Patterson's authority to indorse checks on behalf of the named payees, and her agreement, if any, with the bank.[6]

> Question 1(A). Is the signature of an authorized signer who is not the named payee an indorsement if that signature is located on the back of a check that is presented for payment, bears no signature in the name of the payee on the back, and is cashed by a bank?

We answer the reformulated question in the affirmative. Patterson's signatures constitute indorsements under Washington law.

Patterson's signature is an indorsement

Washington law defines "indorsement" in RCW 62A.3-204(a). The parties in this case urge us to apply different portions of subsection (a)'s definition. Travelers focuses on the first half of subsection (a), arguing a signature must negotiate, restrict payment, or incur indorser's liability to be an indorsement. Travelers contends that Patterson's signatures do not meet any of the three alternatives in subsection (a) and are instead receipts that document "'proof of who cashed the check[s].'" Pl. Travelers Cas. & Sur. Co. of Am.'s Opening Br. at 33 (Travelers Br.). Travelers argues this proves unambiguously that Patterson's signatures were not indorsements. The Bank emphasizes the last half of subsection

---

[6] We do not opine on whether, given our resolution of the certified questions, those factual issues will need to be resolved.

(a). The Bank argues that state law *presumes* a signature on the back of a check is an indorsement.

> RCW 62A.3-204(a) states:
>
> "Indorsement" means a signature, other than that of a signer as maker, drawer, or acceptor,[7] that alone or accompanied by other words is made on an instrument for the purpose of (i) negotiating the instrument, (ii) restricting payment of the instrument, or (iii) incurring indorser's liability on the instrument, but regardless of the intent of the signer, a signature and its accompanying words is an indorsement unless the accompanying words, terms of the instrument, place of the signature, or other circumstances unambiguously indicate that the signature was made for a purpose other than indorsement.

Chapter 62A.3 RCW was modeled on the Uniform Commercial Code (UCC) and official comment to the parallel UCC provision, article 3's "Negotiable Instruments." "Courts in Washington have relied on the Official Comments to U.C.C." *Bank of Am. NT & SA v. David W. Hubert, PC*, 153 Wn.2d 102, 113 n.9, 101 P.3d 409 (2004) (citing *Jones v. Allstate Ins. Co.*, 146 Wn.2d 291, 313, 45 P.3d 1068 (2002)). The comment elaborates that in some cases, an indorsement may serve more than one purpose. The "intent of the signer" may be determined by words accompanying the signature, the place of the signature, or other circumstances. *See* RCWA 62A.3-204(a) U.C.C. cmt. 1, at 69. As an example, the comment states that if a signature is not qualified and appears in the place normally

---

[7] RCW 62A.3-103 defines "acceptor" as a drawee who has accepted a draft. It does not include the indorsers in this case because the drawee here is the Bank itself.

used for indorsements, it may be an indorsement even though the signer intended the signature to be a receipt. *Id.* "The general rule is that a signature is an indorsement if the instrument does not indicate an unambiguous intent of the signer not to sign as an indorser." *Id.* Put another way, "[a] signature on the back of an instrument is an indorsement unless it says that it is not. If the instrument does not indicate any clear intent on the part of the signer to sign as anything other than an indorser, the signature is an indorsement." *Chi. Title Ins. Co. v. Allfirst Bank*, 394 Md. 270, 284, 905 A.2d 366 (2006).

Washington's definition of "indorsement" is technical and somewhat counterintuitive—indeed, a Maryland court has described its own identical version of the statute and official comment as "somewhat unnecessarily obtuse." *See id.* *Webster's Dictionary*'s definition reflects the common understanding of the term. *Webster's* defines "indorsement" as (1) the process of "sign[ing] one's name as payee on the back of (a check) in order to obtain the cash or credit represented on the face" or (2) "inscrib[ing] (one's signature) on a check, bill, or note." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1154, 749 (1993) (noting "indorse" as a variant spelling of "endorse" and defining the terms "endorsement" and "endorse"). Carefully read in context, the meaning of "indorsement" under Washington statutes is plain and controls in this case. If a statute's meaning is plain on its face, we "must give effect to that plain meaning as an expression of

11

legislative intent." *Campbell & Gwinn*, 146 Wn.2d at 9-10. RCW 62A.3-204(a) does not expressly require the "named payee" to sign or indorse the instrument. Instead, the statute essentially provides four alternatives under which a signature may qualify as an indorsement. Under the fourth alternative, any signature operates as an indorsement unless it is unambiguously something else. Additionally, while the UCC does not define "indorsement," secondary sources suggest any person's signature could act as an indorsement, not just the payee or holder.[8] For example, *Black's Law Dictionary* defines "indorsement" as (1) "[t]he placing of a signature, sometimes with an additional notation, on the back of a negotiable instrument to transfer or guarantee the instrument or to acknowledge payment" or (2) "[t]he signature or notation itself." BLACK'S LAW DICTIONARY 893 (10th ed. 2014). Definition (2) supports the conclusion that a signature or notation itself is an indorsement.

We conclude Patterson's signatures are indorsements as a matter of law. Under a plain reading of RCW 62A.3-204(a) and its UCC official comment, a signature qualifies as an "indorsement" if it meets one of four alternatives: (1) it was made to negotiate the instrument, (2) it was made to restrict payment, (3) it was made to incur signer's liability, or (4) it was a signature and not

---

[8] "Indorsement" is generally understood to mean writing one's signature on the back of the commercial paper. *See* 5A RONALD A. ANDERSON & LARY LAWRENCE, ANDERSON ON THE UNIFORM COMMERCIAL CODE §§ 3–202 to 3–202.33 (3d ed. 1994).

12

unambiguously something other than an indorsement. Patterson's signatures arguably fit the first alternative and plainly fit the fourth—she signed the top area on the back of checks at issue where an indorsement would normally appear, she presented the checks for payment, and she did nothing that would indicate unambiguously that her signature was anything but an indorsement.

The UCC exhibits a strong presumption in favor of the legitimacy of indorsements, which protect the transfer of negotiable instruments by giving force to the information presented on the face of the instrument. *See In re Foreclosure of Deed of Tr. Executed by Bass*, 366 N.C. 464, 468, 738 S.E.2d 173 (2013) (citing LAWRENCE'S ANDERSON ON THE UNIFORM COMMERCIAL CODE § 3–204 (3d ed. 2003)). Treating Patterson's signatures as indorsements aligns with this presumption. Likewise, committing to the jury the factual question of Patterson's authority to indorse checks promotes uniformity of commercial law, as a multitude of jurisdictions follow this procedural trajectory. *See* JAMES J. WHITE, ROBERT S. SUMMERS & ROBERT A. HILLMAN, UNIFORM COMMERCIAL CODE § 19:4 n.8 (6th ed. 2013) (listing cases that have found and not found authorization).[9]

---

[9] Authorization was found in *In re McMullen Oil Co.*, 251 B.R. 558 (Bankr. C.D. Cal. 2000) (depository bank was not liable for a missing indorsement where the depositor was an authorized agent of the payee).

Authorization was not found in *Seattle-First National Bank v. Pacific National Bank of Washington*, 22 Wn. App. 46, 55, 587 P.2d 617 (1978) (finding no agency relationship existed between depository bank and indorser); *Gallery Garage Mgmt. Corp. v. Chemical Bank*, 226 A.D.2d 305, 642 N.Y.S.2d 217 (1996) (bank liable for checks where no actual, apparent, or implied agency authority existed and it was commercially unreasonable to accept them); *Gen.*

Travelers argues that Patterson's signatures were receipts of "'who cashed the check[s],'" not indorsements. Travelers's Br. at 33. Accepting this argument would require us to give RCW 62A.3-204 a strained reading. It would also require us to put aside the comment that explains that if an indorsed signature "is not qualified in any way and appears in the place normally used for indorsements, it may be an indorsement even though the signer intended the signature to be a receipt." RCWA 62A.3-204 U.C.C. cmt. 1, at 69. Patterson signed in the upper area of the checks in the place normally used for indorsements. *See, e.g.,* 5A RONALD A. ANDERSON & LARY LAWRENCE, ANDERSON ON THE UNIFORM COMMERCIAL CODE § 3–202:47 (3d ed. 1994) ("[o]rdinarily and following the literal meaning of the term, an indorsement is written on the back of the instrument"). Even if Patterson intended her signature to be a receipt, it is still an indorsement for statutory purposes.[10]

We conclude that the signature of an authorized signer who is not the named payee is an indorsement if that signature is located on the back of a check that is

---

*Am. Life Ins. Co. v. AmSouth Bank*, 100 F.3d 893 (11th Cir. 1996) (bank liable to payee of check for conversion when it allowed an authorized indorser to deposit the check into his own account; agent did not have that apparent authority); *Kenerson v. F.D.I.C.*, 44 F.3d 19 (1st Cir. 1995) (agent was authorized to receive checks but not to indorse them).

[10] *Anderson on the Uniform Commercial Code* further explains that an indorsement need not be on any particular part of the instrument provided the intention to indorse can be determined or provided the signing is not clearly in some other capacity. *See* 6 RONALD A. ANDERSON & LARY LAWRENCE, ANDERSON ON THE UNIFORM COMMERCIAL CODE § 3–202:47 (3d ed. 1998) (citing U.C.C. § 3-402, which was adopted by Washington in RCW 62A.3-204 and elaborates on former section 3-402).

presented for payment, bears no signature in the name of the payee on the back, and is cashed by a bank and answer the first part of the reformulated certified question 1 in the affirmative.

<u>Whether Patterson's signature is "unauthorized" is a question for the trier of fact</u>

Because we have determined that Patterson's signatures are indorsements as a matter of law, we may, but need not, address this issue. However, because the federal district court has certified this question to us, we will address it briefly.

An unauthorized signature is a "signature made without actual, implied, or apparent authority." RCW 62A.1-201(b)(41). This applies to "indorsements." RCWA 62A.1-201 U.C.C. cmt. 43, at 43. UCC comments attached to chapter 62A.3 RCWA explain that the former version of the statute was unclear as to whether an "'unauthorized signature'" in articles 3 and 4 applied to indorsements. *Id.* Thus, lawmakers deleted the words "or indorsement" so that references to "unauthorized signature" in RCWA 62A.3-406 and in articles 3 and 4 as a whole "unambiguously refer to any signature." *Id.*

The legislature has directed us to construe the UCC in light of agency law, and learned treatises direct us to resolve questions of authorization under the UCC through agency law principles. RCW 62A.1-103(b); 5A ANDERSON & LAWRENCE, *supra*, § 3–202:35 (citing U.C.C. § 1–103). Under agency principles, an indorsement may be made by an agent; it is not necessary that an indorsement be

made by the holder personally because it could be written on behalf of the holder. *See* RCW 62A.3-402 (signature by representative); *see also* 5A ANDERSON & LAWRENCE, *supra*, § 3–202:35 (citing *Pazol v. Citizens Nat'l Bank of Sandy Springs*, 110 Ga. App. 319, 321, 138 S.E.2d 442 (1964)). "Courts have handled authorization determinations on a case by case basis and looked to agency law to determine whether there was actual or apparent authorization." WHITE ET AL., *supra*, at 332-33 (6th ed. 2013); *see also Summerlin v. Nat'l Serv. Indus., Inc.*, 72 N.C. App. 476, 478-80, 325 S.E.3d 12 (1985) (existence of authority to sign on behalf of another is a question of fact when reasonable inferences from evidence conflict). Whether an agency relationship exists is generally a question of fact. *Unruh v. Cacchiotti*, 172 Wn.2d 98, 114, 257 P.3d 631 (2011) (citing *O'Brien v. Hafer*, 122 Wn. App. 279, 281, 93 P.3d 930 (2004)); *see Hudson v. Pac. Truck & Tractor Co.*, 151 Wash. 46, 50, 274 P. 789 (1929) (contention that money payments were made without authority is a question of fact). The record is unclear on whether Skils'Kin had the authority to authorize Patterson to act as an agent for its clients and if so, whether it did authorize her to so act, or whether those clients had given her that authority. We decline to reach this portion of the certified question.

> Question 1(B). Are claims based on unauthorized indorsements that are not discovered and reported to a bank within one year of being made available to the customer time barred under RCW 62A.4-406(f)?

16

Assuming without deciding that the indorsements are unauthorized, we must decide whether the RCW 62A.4-406(f) time bar applies to claims made based on unauthorized indorsements. RCW 62A.4-406(f) states:

> Without regard to care or lack of care of either the customer or the bank, a natural person whose account is primarily for personal, family, or household purposes who does not within one year, and any other customer who does not within sixty days, from the time the statement and items are made available to the customer (subsection (a)) discover and report the customer's unauthorized signature or any alteration on the face or back of the item or does not *within one year* from that time discover and report any unauthorized indorsement is precluded from asserting against the bank such unauthorized signature *or indorsement* or such alteration. If there is a preclusion under this subsection, the payor bank may not recover for breach of warranty under RCW 62A.4-208 with respect to the unauthorized signature or alteration to which the preclusion applies.

(Emphasis added.)

The Bank argues that Travelers's claim is time barred under this statute. Travelers contends that RCW 62A.4-406(f) does not apply because its claim is not based on "unauthorized alterations, indorsements or customer signatures." Travelers's Br. at 26. Instead, Travelers contends its claim rests on RCW 62A.4-401(a), which states that "[a] bank *may* charge against the account of a customer an item that is properly payable from that account even though the charge creates an overdraft. An item is properly payable if it is authorized by the customer and is in accordance with any agreement between the customer and bank." (Emphasis added.) Travelers contends that the statute creates a requirement that the check be properly payable for it to be paid and that the checks at issue were not properly

17

payable because they were not indorsed by the named payee. Travelers relies on

RCW 62A.4-401(a)'s language stating something is properly payable "if it is

authorized by the customer and is in accordance with any agreement between the

customer and bank." But this is a section concerning overdrafts, not a statement of

the general principles governing payability. *Cf.* 6C RONALD A. ANDERSON & LARY

LAWRENCE, ANDERSON ON THE UNIFORM COMMERCIAL CODE § 4-401:5 (3d. ed.

2000) (when a bank pays an item which is not properly payable, it may not debit its

customer's account); *id.* § 4-401:55 (collecting cases).[11]

Under the plain language of RCW 62A.4-406(f), the time bar applies to

unauthorized indorsements. The adjective "unauthorized" modifies signature,

indorsement, and alteration in RCW 62A.4-406(f). *Fidelity & Deposit Co. of

Maryland v. Dally* appears to be the only Washington case that has addressed

specifically the one-year time bar in RCW 62A.4-406(f).[12] 148 Wn. App. 739, 747-

48, 201 P.3d 1040 (2009). Other jurisdictions have found that RCW 62A.4-

406(f)'s requirement that customers notify banks of unauthorized signatures,

alterations, or indorsements is a condition precedent to bringing suit. *See Euro*

---

[11] We note in passing that Travelers does not suggest an alternative statute of limitations or other species of time bar that would apply. We find it unlikely that the UCC would have no time bar on this category of claims.

[12] Other Washington cases have referenced RCW 62A.4-406 but have not analyzed the time bar. *See Seattle-First Nat'l Bank v. Pacific Nat'l Bank of Wash.*, 22 Wn. App. 46, 587 P.2d 618 (1978) (did not address time limitations imposed by RCW 62A.4-406); *Parsons Travel, Inc. v. Hoag*, 18 Wn. App. 588, 570 P.2d 445 (1977) (stands for same proposition as *Seattle-First*).

*Motors, Inc. v. Sw. Fin. Bank & Tr. Co.*, 297 Ill. App. 3d 246, 251-52, 696 N.E.2d 711, 231 Ill. Dec. 415 (1998) (citing other jurisdictions reaching the same conclusion); 6C ANDERSON & LAWRENCE, *supra*, at 490 (RCW 62A.4-406 relates only to the time for notice and is not a statute of limitations specifying the time within which a suit must be brought).[13]

Accordingly, we conclude that claims based on unauthorized indorsements that are not discovered and reported to a bank within one year of being made available to the customer are time barred under RCW 62A.4-406(f) and answer the second part of the reformulated certified question 1 in the affirmative.

> Question 2. Does a "statement of account" listing of the front of checks and online access to images of the front and backs of checks make the back of the checks "reasonably available"?

We also answer certified question 2 in the affirmative. The Bank provided sufficient information to Skils'Kin to identify the items paid through monthly statements listing check numbers, amounts, and dates. The statement also provided a telephone number for Skils'Kin to call and request the items that cleared a customer's account. This is sufficient under RCW 62A.4-406(a), which concerns customer statements of account and states:

> A bank that sends or makes available to a customer a statement of account showing payment of items for the account shall either return *or* make available to the customer the items paid, copies of the items paid, *or* provide

---

[13] *See also Brown v. Cash Mgmt. Tr. of Am.*, 963 F. Supp. 504 (D. Md. 1997); *Gerber v. City Nat'l Bank of Fla.*, 619 So.2d 328 (Fla. Dist. Ct. App. 1993) (citing cases from numerous jurisdictions in accord).

information in the statement of account sufficient to allow the customer reasonably to identify the items paid. The statement of account provides sufficient information if the item is described by item number, amount, and date of payment. If the bank does not return the items paid or copies of the items paid, it shall provide in the statement of account the telephone number that the customer may call to request an item or copy of an item pursuant to subsection (b)[14] of this section.

(Emphasis added.)

The language of RCW 62A.4-406(a) gives a bank multiple ways to satisfy the statute. A bank that makes available a statement of account may return or make available those items to a customer. *Id.* Providing a check number, amount, and date of payment is sufficient information under the statute. *Id.* Moreover, a bank is not required to return items paid but if it does not, it must provide customers with a telephone number to request paid items. *Id.*

Travelers urges this court to hold that the Bank did not make statements "reasonably available" because Skils'Kin did not agree to receive electronic copies

---

[14] RCW 62A.4-406(b) provides:

> If the items are not returned to the customer, the person retaining the items shall either retain the items or, if the items are destroyed, maintain the capacity to furnish legible copies of the items until the expiration of seven years after receipt of the items. A customer may request an item from the bank that paid the item, and that bank must provide in a reasonable time either the item or, if the item has been destroyed or is not otherwise obtainable, a legible copy of the item. A bank shall provide, upon request and without charge to the customer, at least two items or copies of items with respect to each statement of account sent to the customer. A bank may charge fees for additional items or copies of items in accordance with [ ]RCW 30.22.230. Requests for ten items or less shall be processed and completed within ten business days.

(Reviser's note omitted.)

20

of its monthly statements and the Bank did not send copies of the *backs* of the cleared checks. Travelers notes that Skils'Kin's statement of account did not give instructions on obtaining original or copies of canceled checks.

We find Travelers's argument unpersuasive. The Bank satisfied RCW 62A.4-406(a) because it complied with the language of the statute. It provided sufficient information to Skils'Kin to reasonably identify the items paid through monthly statements listing check numbers, amount, and dates. RCW 62A.4-406(a) contains no language requiring a bank to return copies of checks to its customers. *See also* RCWA 62A.4-406 U.C.C. cmt. 1, at 345 (customer's duties to timely review and report errors triggered if bank sends a statement of account complying with safe harbor rule without returning the paid items). Nevertheless, the Bank sent copies of the items with images of the fronts of the paid checks and language on the first page directing customers to call a telephone number for assistance. A customer could call that number to request copies of cancelled checks.

Other jurisdictions have held that statements with images of the face of all cleared checks satisfies the notice requirement mirroring RCW 62A.4-406(f). *Ownbey Enters., Inc. v. Wachovia Bank, NA*, 457 F. Supp. 2d 1341 (N.D. Ga. 2006) (Ga. Code Ann. § 11-4-406(c), a statute paralleling ours, barred customer's claim despite providing images of only front of checks where customer could obtain copies of front and back of checks); *Redland Co. v. Bank of Am. Corp.*, 568

21

F.3d 1232, 1236 (11th Cir. 2009). In *Redland*, a corporate employee wrote checks payable to a specific company and the employee indorsed the checks, writing the company's name on the back. 568 F.3d at 1234. The depositing bank sent the corporation monthly account statements including copies of the fronts of all checks. *Id.* The United States Court of Appeals for the Eleventh Circuit held statements and copies of check fronts were sufficient to trigger customer's duty to report. *Id.* at 1236. However, the court noted that if the customer had the opportunity to review the backs of checks, it was unlikely the customer would have discovered the employee's scheme because the employee did not use his own name—he signed the specific company's name. *Id.* Despite *Redland*'s factual differences from this case, it is clear that the language of RCW 62A.4-406(a) sets out the requirements for a satisfactory statement of account. Even if providing the copies of only the front of checks is insufficient standing alone, the Bank's statement of account still satisfies RCW 62A.4-406(a) because it provided sufficient information (numbers, amount, and dates of cleared checks) and a telephone number for Skils'Kin to call for assistance. If the Bank had provided only the numbers, amount, and dates of the checks plus assistance telephone number to request copies, it would have minimally satisfied the statute. Here, the Bank exceeded its obligations under the statute by providing Skils'Kin with online banking services that included electronic viewing of the fronts and backs of all

22

cleared checks. *See also* WHITE ET AL., *supra*, at 429 ("We see no reason why a listing of these checks and the debits to the account together with digital images of checks would not fully satisfy the 'statement of account' requirement in [U.C.C.] 4-406(a)."); *see also Tatis v. US Bancorp*, 473 F.3d 672, 675-76 (6th Cir. 2007) (bank satisfied "'made available'" requirement by keeping statements at bank instead of providing them to customer); *Grubaugh v. Cent. Progressive Bank*, No. 13-3045, 2014 WL 794141 (E.D. La. 2014) (court order) (bank satisfied statute because customer could access statements at the bank).

> Question 3. Does a bank fail to exercise ordinary care as a matter of law if it pays a check to a person other than the payee when the check contains no indorsement in the name of the payee?

Generally, a bank fails to exercise ordinary care as a matter of law in paying a check to a person other than a named payee when the check lacks a payee's indorsement. However, we stress that questions of fact remain as to Patterson's authorization to act as an agent on behalf of the named payees. Based on the record before us, a trier of fact could find that Patterson was or was not authorized to indorse checks in the name of the payees. Therefore, the resolution of certified question 3 also turns on unresolved factual questions and should not be determined as a matter of law. Determination of this question does not affect the application of RCW 62A.4-406(f), which applies with or "[w]ithout regard to . . . lack of care."

23

*See also* 6C ANDERSON & LAWRENCE, *supra*, at 519 (collecting cases). Whether the Bank exercised ordinary care relates to RCW 62A.4-406(d) and (e).

We stress that what constitutes a proper degree of care for a bank and a depositor is ordinarily a question of fact for the trier of fact. *See* 6C ANDERSON & LAWRENCE, *supra*, at 446-48. RCW 62A.3-402(a) allows binding signatures on checks made by individuals "acting, or purporting to act, as a representative." A payee's authorized agent may sign in that agent's name or in the payee's name. RCW 62A.3-402(a) ("either the name of the represented person or the name of the signer[;] the represented person is bound by the signature"); *see Domestic Constr., LLC v. Bank of Am., NA*, No. C07-5357BHS, 2009 WL 2710244 (W.D. Wash. 2009) (court order). If a jury determines Patterson had authority as an agent of the payee's to indorse the checks at issue, the signatures are binding as a matter of law on the principals/payees under RCW 62A.3-402(a).

A bank does not exercise ordinary care if it fails to exercise "reasonable commercial standards, prevailing in the area in which the person is located, with respect to the business in which the person is engaged." RCW 62A.3-103(a)(7). Certain "egregious practices by banks" violate reasonable commercial standards as a matter of law. *See Cont'l Cas. Co. v. Fifth/Third Bank*, 418 F. Supp. 2d 964, 978 (N.D. Ohio 2006); *Govoni & Sons Constr. Co. v. Mechs. Bank*, 51 Mass. App. Ct. 35, 742 N. E. 2d 1094 (2001). Examples of a bank's "'clearly unreasonable

24

conduct'" are payment of checks with missing indorsements, ignoring a restrictive indorsement, and failure to inquire into the authority to sign of one purporting to be an agent. *Govoni & Sons*, 51 Mass. App. Ct. at 45 (quoting WHITE ET AL., *supra*, at 761-62).

The record in this case does not establish the Bank exercised "clearly unreasonable conduct" and therefore failed to exercise reasonable care as a matter of law. Travelers argues that a bank fails to exercise ordinary care under Washington law when a transaction is "'suspect on its face.'" Travelers's Br. at 42 (quoting *Bank of W. v. Wes-Con Dev. Co.*, 15 Wn. App. 238, 241, 548 P.2d 563 (1976)). *Bank of West* concerns the payment of a check with a forged payee's indorsement. *Bank of W.*, 15 Wn. App. at 240-41. Unlike here, the parties in *Bank of West* did not dispute that the signature at issue was an indorsement. *See id.* at 238-40. Similarly, Travelers's reliance on *Govoni & Sons* to argue the Bank acted commercially unreasonable is inapposite. *Govoni & Sons* concerns missing indorsements. 51 Mass. App. Ct. at 50-51. In the case at hand, the checks cashed by the Bank contained Patterson's signatures, which constitute indorsements. *See supra* Question 1(A). Additionally, evidence was presented regarding the Bank's inquiry into Patterson's authority.

Whether a bank exercises ordinary care when it pays a check to a person other than the named payee, when the payee has not indorsed the check, will turn on the facts of the individual case.

CONCLUSION

We hold that Patterson's signatures are indorsements under Washington law. Whether she had authority to sign on behalf of the named payees on the checks at issue is properly decided by the trier of fact. In addition, we note that Skils'Kin's failure to discover and notify the Bank of Patterson's embezzlement scheme within one year bars Travelers's claims under RCW 62A.4-406(f).

We conclude that the Bank satisfied RCW 62A.4-406(a) because it provided sufficient information to Skils'Kin to reasonably identify the items paid through monthly statements listing check numbers, amounts, and dates; and provided a phone number to call to request items or copies of items paid. *See* RCW 62A.4-401(a). Sending the fronts of checks satisfies the statute.

Finally, whether a bank exercises ordinary care when it pays a check to a person other than the payee, when the check lacks that payee's indorsement, is a factual determination that requires deciding whether the person was an authorized agent of the payee. The parties in this case dispute Patterson's authority as an agent to indorse checks for the named payees. This is a question for the trier of fact.

26

_Gonzáles, J._

WE CONCUR:

_Madsen, C.J._

_Johnson, J._

_Owens, J._

_Fairhurst, J._

_Stephens, J._

_Wiggins, J._

_González McCloud, J._

_Yu, J._